GRAY–TAYLOR, INC., d/b/a Jimmie
Green Chevrolet, Appellant,

v.

Johnny TENNESSEE, Appellee.

No. 17193.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Oct. 19, 1978.

Rehearing Denied Nov. 16, 1978.

Bracewell & Patterson, William Fred Hagans, Andrew F. Spalding, Houston, for appellant.

Stephen J. Cavanaugh, Bellaire, for appellee.

PEDEN, Justice.

Gray-Taylor, Inc., d/b/a Jimmie Green Chevrolet, appeals from a judgment in a suit filed by Johnny Tennessee based primarily on the Texas Deceptive Trade Practices Act (Tex.Bus. & Comm. Code Ann. § 17.41 et seq.). The jury found that Jimmie Green Chevrolet advertised a certain

automobile for sale with the intent not to sell it as advertised a violation of Art. 17.-45(9) of the Act, and that Jimmie Green's notice to the plaintiff of default on his vehicle was commercially unreasonable under Section 9.504(c), Texas Bus. & Comm. Code. The jury also determined reasonable attorney's fees and assessed damages. The trial court held as a matter of law that Jimmie Green violated the Federal Truth In Lending Act, 15 U.S.C. § 1601, *et seq.*, and Regulation Z, 12 C.F.R. § 226.1 *et seq.*, by failing to provide a signature line following the full context of the retail installment contract. Appellant asserts no evidence and insufficient evidence points of error, contends that the award of $426.77 as compensation to the appellee was excessive and says the awards of $197.67 as a penalty for violation of Section 9.507 of the Uniform Commercial Code and $172.60 as penalty for violation for the Truth In Lending Act and Regulation Z were erroneous.

In August, 1976, Johnny Tennessee read the newspaper ads for used cars. On the day in question two significant ones were run. The first, placed by a Mr. Ben Nolan, stated:

> Grand Prix '75, take up payments, air, power, new radial tires, AM-FM radio, tilt steering wheel. Like new. Must sell. Owner getting company car. Installed CB, antenna and radar snooper optional. 358–6322

It is uncontroverted that the 358–6322 telephone number was at Mr. Nolan's residence and that he had no association with Jimmie Green Chevrolet.

The second ad, by Jimmie Green Chevrolet, was located on the same page, was much larger than the first, and advertised several cars for sale, including this one:

> '75 Pontiac Grand Prix, black on black, bucket seats, center console, power steering, power brakes, power seats, mag wheels, new steel belted radial tires, one owner . . .

Three telephone numbers were listed: 529–0710, 529–0803 and 529–4911.

Tennessee was interested in taking over the notes on a 1975 Pontiac Grand Prix.

He testified that when he "called the number in the paper", a man named Jones from Jimmie Green Chevrolet answered and said "the car that he had was a 1975 Grand Prix." Tennessee testified that it was not one on which payments could be taken over from the owner. In later testimony, the appellee admitted that the ad he saw "wasn't a Jimmie Green ad at all. It was a small print—regular ad."

When the appellee arrived at Jimmie Green Chevrolet, he was informed that the car they said they had in stock had been sold but that they had other cars he might find of interest. He bought a 1969 Plymouth Fury for $200 down and agreed to make an additional payment of $150 on September 15, and the first installment of $94.80 on September 30. The contract price was $1093.75, with an additional $86.30 finance charge and a $23.60 insurance premium.

After accepting delivery of the car, the appellee had several problems with it. Its inspection sticker was expiring, so he returned it to Jimmie Green Chevrolet that same day. He finally got an inspection sticker, but two days later the brakes went out. The cost of repair was $104.29, and since the appellee was without funds, the mechanic held the car until he received a pay check. Meanwhile, he paid a coworker $20.00 every two weeks for transportation to and from work.

On September 16, Mr. Salter of Jimmie Green Chevrolet telephoned appellee concerning his default on the $150.00 payment due on September 15. Appellee complained that the repair bill for the car's brakes would keep him from making the entire payment. The parties disagree about whether an agreement was worked out.

The car was repossessed and notice of repossession was sent to the appellee, stating that the car would be sold at public sale on October 1, 1976, at 2:00 a. m. Mr. Salter admitted that the 2:00 a. m. time was an error and that the sale was scheduled for 2:00 p. m. On September 24, 1976, appellee's counsel asked that the automobile not

be sold, and at the time of trial, the car was still being held on the company's premises.

■ Appellant first contends that the trial court erred in entering judgment for the plaintiff and in refusing to grant the defendant's motion for directed verdict because the judgment is founded on Special Issue Number 2, and there is no evidence to support the jury's affirmative answer to it. That issue asked:

Do you find from the preponderance of the evidence that Defendant Jimmie Green Chevrolet advertised the 'Grand Prix, '75, take up payments, air, power, new radial tires, AM-FM radio, tilt steering wheel. Like new. Must sell. Owner getting company car. Installed CB antenna and radar snooper optional, 358–6322?'

Special Issue Number 3 inquired:

Do you find from a preponderance of the evidence that the advertisement referred to in Special Issue No. 2 was made with intent not to sell the automobile as advertised?

It was also answered "We do."

Appellee does not contend that Jimmie Green placed the ad in question in the newspaper, only that its salesman "adopted" it by representing that such Grand Prix was available for sale when the appellee called to inquire. We have examined the entire record and can find no evidence that the appellant's salesman, Jones, represented that there was available, as the special issue inquired, a "Grand Prix, '75, take up payments, air, power, new radial tires, AM-FM radio, tilt steering wheel. Like new. . . Installed CB antenna and radar snooper optional. 358–6322." Nor can we find any evidence that Jones represented to the appellee that Jimmie Green had an automobile that could reasonably be identified as the one described in the special issue. We agree that there is no evidence to support the jury's answer to Special Issue Number 2.

The submission of Special Issue Number 4 was predicated on an affirmative answer to No. 3, and inquired:

Do you find from a preponderance of the evidence that there was an adverse effect on the Plaintiff? 'Adverse Effect' means any damage or injury suffered as the proximate result of advertising the automobile referred to in Special Issues Number 2 and 3 with intent not to sell said automobile as advertised.

Special Issue Number 5, predicated on an affirmative answer to Number 4, asked whether the advertisement and intent referred to in Issues 2 and 3 were a producing cause of adverse effect on the plaintiff. In response to predicated issue No. 6, the jury found that $426.77 would reasonably compensate the plaintiff for the adverse effect caused by the advertisement and intent referred to in Special Issues 2 and 3.

We sustain the appellant's first point of error to the extent that the trial court's judgment is founded on the jury's affirmative answer to Special Issue No. 2; this includes the answers to Issues 3–6.

The trial judge awarded the plaintiff $197.67 as a penalty for violation of Section 9.507 of the Texas Business and Commerce Code after the jury found in response to Special Issue No. 1 that the "notice of default" sent to the plaintiff by the defendant was not commercially reasonable. That section of the Code provides:

Section 9.507 Secured Party's Liability for Failure to Comply with This Subchapter

(a) If it is established that the secured party is not proceeding in accordance with the provisions of this subchapter, disposition may be ordered or restrained on appropriate terms and conditions. If the deposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by failure to comply with the provisions of this subchapter. *If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus ten percent of the principal amount of the debt or the*

*time price differential plus ten percent of the cash price.* (emphasis added)

(b) The fact that a better price could have been obtained by sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner. . .

■ "Consumer goods" are items bought or used primarily for personal, family or household use. Tex.Bus. & Comm. Code Ann. § 9.109.

■ In the appellant's eighth point of error it says the trial court erred in awarding a recovery to the plaintiff for the commercially unreasonable notice of sale because the automobile sold to the plaintiff was never disposed of after repossession by the appellant. We sustain this point.

In the Uniform Commercial Code Comment appearing after Section 9.507 in Vernon's Texas Business & Commerce Code it is stated: ". . . This Section therefore provides that a secured party proposing to dispose of collateral in an unreasonable manner, may, by court order, be restrained from doing so, . . . The Section further provides for damages where the unreasonable disposition has been concluded, and, in the case of consumer goods, states a minimum recovery."

We do not agree with the appellee's position that Section 9.507 entitles a debtor, simply because his collateral is consumer goods, to at least a minimum recovery if the creditor gives him a notice of proposed disposition that is not a commercially reasonable one—even though the creditor does not dispose of the goods. We consider that the statute was not intended to punish the creditor and recompense the debtor unless the

debtor was harmed. Even though Jimmie Green Chevrolet appears to have made a false start, it could have issued new notices and could still have concluded a sale of the car in a commercially reasonable manner. We do not reach appellant's Points of Error 9–11.

Appellant's next points of error involve the Federal Truth In Lending Act, 15 U.S.C. § 1601 *et seq.,* and Regulation Z, 12 C.F.R. § 226.1 *et seq.* The appellant contends that the trial court erred in directing a verdict for the appellee in the sum of $172.60 because all the required disclosures were on the face of the retail installment agreement and the form of the document was in compliance with the law.

Under the Federal Truth In Lending Act and its companion Regulation Z, required disclosures must be made "clearly and conspicuously", (15 U.S.C. § 1631) and "in meaningful sequence . . ." (12 C.F.R. § 226.6(a)). In addition "[a]ll disclosures shall be made together on either: (1) The note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or (2) One side of a separate statement which identifies the transaction." 12 C.F.R. § 226.8(a). Included in the list of required disclosures is a description of ". . . any security interest held or to be retained or acquired by the creditor in connection with the extension of credit . . ." 15 U.S.C. § 1638(a)(10). See also 12 C.F.R. § 226.8(b)(5). When the required disclosures are incorporated into a contract or security agreement and the evidence of the transaction is a single document, Regulation Z provides:

(1) that the disclosures required by § 226.8 of the Regulation may be made on the face of the document, on its reverse side, or on both sides;

(2) that when the reverse side of the document is utilized, both sides must contain the statement "NOTICE: See other side for important information;" and

(3) that "the place for the customer's signature shall be provided following the full content of the document." 12 C.F.R. § 226.801

The retail installment contract in question is a two-sided document with the space for the customer's signature located only on the face of the document. The face of the document lists required disclosures including a description of the security interest—"Buyer hereby acknowledges delivery and acceptance of Motor Vehicle in its present condition, and GRANTS TO SELLER A PURCHASE MONEY SECURITY INTEREST under the Uniform Commercial Code IN MOTOR VEHICLE, and in and to all proceeds, substitutions, replacement, additions, and accessions to the Motor Vehicle." The "NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION" provision is located not only on the face of the contract but also on its reverse side. The reverse side of the document bears this provision:

4. Additions to Motor Vehicle—BUYER hereby agrees that all equipment, accessories, repairs, and parts placed upon MOTOR VEHICLE during the existence of the security interest hereby granted shall become a part of MOTOR VEHICLE and shall be subject to the terms and provisions of this contract.

The trial court found as a matter of law that defendant had violated the Truth In Lending Act and Regulation Z thereof by failing to provide a signature line following the full context of the document representing the retail installment contract in question. In *McDonald v. Savoy*, 501 S.W.2d 400 (Tex.Civ.App.1973, no writ), the contract failed to contain the "NOTICE" provision and the signature line was on the face of the document. The court held:

Here, the required statement instructing the customer to 'See other side' does not appear on both sides of the page. The signature lines appear only on the face of the page; and therefore, the requirement that the signature lines be provided following the full content of the document has been met.

Appellants argue that because all the required disclosures were on the face of the contract and contained the "NOTICE" provision on both sides, the appellee, in effect, had read the entire document before signing on the face of the contract. Regulation Z, Section 226.801, paragraph (b), states:

Where a creditor elects to combine disclosures with the contract, security agreement, and evidence of a transaction in a single document, the disclosures required under § 226.8 shall, in accordance with § 226.6, be made on the face of that document, on its reverse side, or on both sides: Provided, That the amount of the finance charge and the annual percentage rate shall appear on the face of the document, and, if the reverse side is used, the printing on both sides of the document shall be equally clear and conspicuous, both sides shall contain the statement, "NOTICE: See other side for important information," and the place for the customer's signature shall be provided following the full content of the document.

If a "NOTICE: See other Side" provision located on both the face and reverse of the document were sufficient to make a signature on the face of the contract follow "the full content of the document", then the requirement that the customer's signature follow the "full content of the document" would be unnecessary because no matter where the signature was located, it would follow "the full content." We hold that since the contract did not provide a signature line on its reverse side, it violated the Federal Truth In Lending Act and Regulation Z. Further, the Truth In Lending Act and Regulation Z, 12 C.F.R. § 226.8, list eight specific disclosures which must be on the same side of the page and above the place for the customer's signature (if they are made on the note or other instrument evidencing the obligation, as was done in our case). The fifth of the listed required disclosures includes this provision.

If after-acquired property will be subject to the security interest, or if other or future indebtness is or may be secured by

any such property, this fact shall be *clearly* set forth in conjunction with the description or identification on the type of security interest held, retained or acquired. (emphasis added)

We hold that the above provision of the Act and Regulation was not met by the statement we have noticed that began "Buyer hereby acknowledges delivery . . and GRANTS TO SELLER A Purchase MONEY SECURITY INTEREST . . . IN MOTOR VEHICLE . . ." that appeared on the face of the document above the place for Mr. Tennessee's signature.

Appellant's final point of error asserts that the trial court incorrectly awarded attorney's fees to the appellee. Appellee's claim for attorney's fees is based on both the Texas Deceptive Trade Practices Act, and the Truth In Lending Act. We have held that he is entitled to recover only under the Truth In Lending Act, and since the trial court did not apportion the award of attorney's fees between the two bases for recovery, that portion of the judgment must be remanded for a determination of a reasonable attorney's fee under the Truth In Lending Act recovery. *Combined American Insurance Co. v. Jordan*, 403 S.W.2d 811 (Tex.Civ.App.1966, writ ref. n.r.e.).

The judgment in favor of the plaintiff for $172.60 under the Truth In Lending Act, Regulation Z, is severed and is affirmed; the judgment in favor of the plaintiff for $1,050 under the Deceptive Trade Practices Act is severed and is reversed and is rendered that plaintiff take nothing, as is the judgment in plaintiff's favor of $197.67 under Section 9.507 of the Texas Business and Commerce Code; the judgment in favor of the plaintiff for attorney's fees is severed and is remanded so that a reasonable attorney's fee may be determined for the plaintiff's recovery under the Truth In Lending, Regulation Z, provisions alone.