GRAY–TAYLOR, INC. d/b/a Jimmie
Green Chevrolet, Petitioner,

v.

Johnny TENNESSEE, Respondent.

No. B–8117.

Supreme Court of Texas.

Sept. 19, 1979.

Bracewell & Patterson, William Fred Hagans and Andrew F. Spalding, Houston, for petitioner.

Cavanaugh & Douglass, Stephen J. Cavanaugh, Bellaire, for respondent.

DENTON, Justice.

The primary question in this cause is whether the security interest disclosed in Jimmie Green Chevrolet's retail installment contract for the sale of an automobile violates the "one-side" rule of Regulation Z of the Federal Truth in Lending Act.

After purchasing an automobile from Jimmie Green Chevrolet, Johnny Tennessee, respondent here, brought suit against Gray-Taylor, Inc. d/b/a Jimmie Green Chevrolet, petitioner here, for alleged violations of the Texas Deceptive Trade Practices Act, the Texas Uniform Commercial Code and the Federal Truth in Lending Act. The trial court rendered judgment for Tennessee on all three causes of action. The court of civil appeals severed the Deceptive Trade Practices and the Uniform Commercial Code causes of action and rendered judgment that Tennessee take nothing on those two theories of recovery. 573 S.W.2d 859, 861–862. The court of civil appeals affirmed the trial court's judgment for Tennessee on the Federal Truth in Lending Act violations and remanded the cause to the trial court for a determination of the amount of attorney's fees attributable to the federal violations. 573 S.W.2d at 862–64. We reverse

that part of the court of civil appeals judgment that relates to the Federal Truth in Lending Act and render judgment that Johnny Tennessee take nothing on the federal cause of action.[1]

Tennessee bought a used automobile from Jimmie Green Chevrolet for $200 down and agreed to make additional payments in the future. He failed to make the first payment and Jimmie Green repossessed the automobile.

The contract between the two parties is entitled "RETAIL INSTALLMENT CONTRACT—MOTOR VEHICLE & SECURITY AGREEMENT." It is a two-sided document with the space for the customer's signature located on the face of the document. The face of the document lists required disclosures under the Federal Truth in Lending Act,[2] including the following description of the security interest retained by Jimmie Green:

> Buyer hereby acknowledges delivery and acceptance of Motor Vehicle in its present condition, and GRANTS TO SELLER A PURCHASE MONEY SECURITY INTEREST under the Uniform Commercial Code IN MOTOR VEHICLE, and in and to all proceeds, substitutions, replacements, additions, and accessions to the Motor Vehicle.

Both sides of the document contain the provision "NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION." The reverse side contains the following provision:

> BUYER WARRANTS, COVENANTS AND AGREES:
>
> .   .   .   .   .
>
> 4. Additions to MOTOR VEHICLE— BUYER hereby agrees that all equipment, accessories, repairs, and parts placed upon MOTOR VEHICLE during the existence of the security interest

---

1. The part of the court of civil appeals judgment that relates to the Deceptive Trade Practices and Uniform Commercial Code causes of action has not been appealed to this court. Consequently, this opinion will address only the alleged federal violations.

2. 15 U.S.C.A. §§ 1601, et seq. (1976). The Federal Truth in Lending Act was enacted ".  .  . to assure a meaningful disclosure of credit terms so that a consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C.A. § 1601.

hereby granted shall become a part of MOTOR VEHICLE and shall be subject to the terms and provisions of this Contract.

■ The trial court found, as a matter of law, that Jimmie Green Chevrolet "has violated the Truth in Lending Act and Regulation Z thereof by failing to provide a signature line following the full content of the document representing the retail installment contract." The court of civil appeals affirmed the Truth in Lending Act violations on two grounds: (1) Jimmie Green Chevrolet violated 12 Code of Federal Regulations[3] § 226.801(b) because the space provided for the customer's signature does not follow the full content of the document; and (2) Jimmie Green Chevrolet violated Regulation Z[4] because the description of the security instrument on the face of the document does not clearly disclose that after-acquired property will be subject to the security interest. 573 S.W.2d at 863-64.

■ The first issue is whether 12 C.F.R. § 226.801(b)[5] is applicable to the retail installment contract used by Jimmie Green Chevrolet and therefore requires a signature line on the reverse side of the contract. Our recent decision in *General Electric Credit Corporation v. Smail* controls the disposition of this issue. 584 S.W.2d 690 (Tex.1979). In *Smail,* we concluded that section 226.801(b) applies only to documents designed for processing by mechanical or electronic equipment. 584 S.W.2d at 696; *see Charles v. Krauss Co.,* 572 F.2d 544 (5th Cir. 1978); *Smith v. Chapman,* 436 F.Supp. 58 (W.D.Tex.1977); 5 CCH Consumer Credit Guide ¶ 31,536 (Letter of February 10, 1977). There is no evidence, nor has Johnny Tennessee ever contended, that the retail installment contract used by Jimmie Green Chevrolet was intended for processing by electronic or mechanical equipment. Therefore, Jimmie Green Chevrolet cannot be held liable for failure to comply with the provisions of section 226.801(b).

■ The second issue is whether the retail installment contract used by Jimmie Green Chevrolet violates the "one-side" rule of Regulation Z. Section 226.8(a)[6] of Regulation Z provides that all the disclosures required under section 226.8(b) must be made together on the same side of the page above the customer's signature. Section 226.8(b)(5) requires the disclosure of any security interest in after-acquired property:

(b) . . . In any transaction subject to this section, the following items, as applicable, shall be disclosed:

. . . . .

(5) . . . If after-acquired property will be subject to the security interest, or if other or future indebtedness is or may

**3.** The Code of Federal Regulations contains the regulations and interpretations which govern the Truth in Lending Act. These are promulgated by the Federal Reserve Board.

**4.** 12 C.F.R. §§ 226.1 et seq. Regulation Z is the name commonly used to describe the series of regulations published by the Federal Reserve Board to effectuate the Truth in Lending Act. *See* 15 U.S.C.A. § 1604 (1968). As a legislative rule, Regulation Z has the force and effect of federal law. *See Mourning v. Family Publications Service,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *General Electric Credit Corporation v. Smail,* 584 S.W.2d 690 (Tex. 1979).

**5.** Section 226.801(b) provides:

Where a creditor elects to combine disclosures with the contract, security agreement, and evidence of a transaction in a single document, the disclosures required under § 226.8 shall, in accordance with § 226.6 be

made on the face of that document, on its reverse side, or on both sides: *Provided,* That the amount of the finance charge and the annual percentage rate shall appear on the face of the document, and, if the reverse side is used, the printing on both sides of the document shall be equally clear and conspicuous, both sides shall contain the statement "NOTICE: See other side for important information," and the place for the customer's signature shall be provided following the full content of the document. (original emphasis)

**6.** 12 C.F.R. § 226.8(a) states, in pertinent part: ". . . All the disclosures shall be made together on either: (1) the note or other instrument evidencing the obligation on the same side of the page and above the place for the customer's signature; or (2) One side of a separate statement which identifies the transaction."

be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

Therefore, under Regulation Z, a security interest in after-acquired property must be clearly set forth on the front or first page of the document used in this cause. *See Southwestern Investment Co. v. Mannix,* 557 S.W.2d 755 (Tex.1977); *General Electric Credit Corp. v. Smail,* 584 S.W.2d 690 (Tex. 1979).

██  The description of the security interest on the front page of the document in question states that the "BUYER . . . GRANTS TO SELLER A PURCHASE MONEY SECURITY INTERESTS . . . IN MOTOR VEHICLE, *and in and to all proceeds, substitutions, replacements, additions, and accessions to the Motor Vehicle.*" (emphasis added) It is not necessary to use the words "after-acquired property" in order to retain a security on goods acquired after value has been given. *See, e. g., Anthony v. Community Loan & Investment Corporation,* 559 F.2d 1363 (5th Cir. 1977).[7] The phrase in question here clearly sets forth that certain kinds of after-acquired property will be subject to the security interest. We therefore hold that the face of the document contains the required disclosure of the after-acquired property clause and does not violate the "one-side" rule of Regulation Z. *See e. g., Anthony Community Loan & Investment Corporation, supra* at 1368–69; see *Gennuso v. Commercial Bank & Trust Co.,* 566 F.2d 437, 442 n. 17 (3rd Cir. 1977).

We further find no merit in Tennessee's argument that the "ADDITIONS TO MOTOR VEHICLE" language on the reverse side of the document should have been disclosed on the front side. This language, does not expand the scope of the after-ac-

quired property clause contained on the front. We will not penalize Jimmie Green Chevrolet for explaining on the back of the document an after-acquired property clause that clearly disclosed on the front of the document the property subject to the security interest.

██  In this court, Johnny Tennessee argues for the first time that the document contains a disclosure of a security interest in unearned or retained insurance premiums on the back in violation of 12 C.F.R. § 226.8(b)(5) and that it does not disclose the ten-day limitation on after-acquired consumer goods other than accessions, also in violation of section 226.8(b)(5). These arguments have not been properly preserved and we therefore cannot consider them. *See General Electric Credit Corporation v. Smail,* 584 S.W.2d 690, 699, n. 17 (Tex.1979).

We reverse that part of the court of civil appeals judgment that relates to the violation of the Federal Truth in Lending Act and render judgment that Johnny Tennessee take nothing under the Federal Truth in Lending Act.

---

**7.** The after-acquired property clause in the *Anthony* decision is indistinguishable from the clause before us. In *Anthony,* the contract provided that the lender retained a security interest in the collateral and "all accessions to, substitutions for, replacements of and proceeds from the described collateral." The Fifth Circuit held that "the provision for after-acquired collateral is clear as to what is, or may be, included, and satisfies 12 C.F.R. § 226.8(b)(5), which requires that notice that after-acquired property will be subject to the security interest shall be clearly set forth." 559 F.2d at 1369.