**In re James Russell CRANDALL, Bankrupt.**

**SPRINGS CREDIT UNION, Plaintiff,**

**v.**

**James Russell CRANDALL, Defendant.**

**Bankruptcy No. NG 78–01539 B 1.**

United States Bankruptcy Court, W. D. Michigan.

Jan. 9, 1980.

Hess & Loeks, Daniel B. Hess and Chadwick C. Busk, Grand Rapids, Mich., for plaintiff.

Van Hattum & Hickman, Thomas Van Hattum, Grand Rapids, Mich., for defendant.

## OPINION

### REPOSSESSION—JURISDICTION—TITLE OF TRUSTEE

DAVID E. NIMS, Jr., Bankruptcy Judge.

Springs Credit Union, hereafter Springs, filed a complaint for a determination that its claim against James Russell Crandall, hereafter Crandall, the defendant and bankrupt, is nondischargeable. Crandall filed his answer and a counterclaim for damages due to violations by Springs of the Truth-in-Lending Act, the Michigan Consumer Protection Act and the Uniform Commercial Code. The court found no basis for the claims under the Truth-in-Lending Act and the Michigan Consumer Protection Act and dismissed these counts from the bench. Springs has voluntarily dismissed its claim and now contends that these proceedings should be dismissed for three reasons:

1. The court has no jurisdiction.

2. There is no liability under the U.C.C.

3. That any cause of action rests in the trustee and not the bankrupt.

The facts are not in dispute. At the request of Crandall, who had moved from Grand Rapids, his father-in-law returned two motor vehicles to Springs which held a security interest in the vehicles. The automobiles were subsequently sold but no notice of the sale was furnished to Crandall or his father-in-law.

Springs contends that this court has no summary jurisdiction over the counterclaim filed by Crandall and refers to Sec. 17c(3) of the Bankruptcy Act of 1898, which Act is effective in this case, Bankruptcy Reform Act of 1978. Pub.L. 95–598 Title IV Sec. 403(a). Section 17c(3) provides that a creditor filing an application for a determination of dischargeability of a debt "does not submit himself to the jurisdiction of the court for any purposes other than those specified in this subdivision c." Thus, if an objection to the jurisdiction of the court had been timely raised, I would have no choice but to dismiss because of a lack of jurisdiction.

However, Section 2a(7) of the Act provides in part as follows:

" * * * where in a controversy arising in a proceeding under this Act an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction."

See also Bankruptcy Rule 915(a).

In this case, the counterclaim was filed and served May 4, 1979. Plaintiff had ten days to file its answer to the counterclaim. Bankruptcy Rule 712(a). Actually, the answer was not filed until 20 days after service of the counterclaim and then only an answer was filed. No objection to jurisdiction was filed until June 15, 1979. By that time, plaintiff had consented to jurisdiction.

Next, Springs claims that there is no cause of action against it under the Uniform Commercial Code.

In setting forth the manner in which collateral is to be disposed of after default, the Michigan Uniform Commercial Code, Section 9–504(3), Mich.Comp.Laws Sec. 440.9504(3) [Mich.Stat.Ann. Sec. 19.9504(3) (Callaghan 1975)] provides, in part:

" * * * reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor."

Section 9507(1), Mich.Comp.Laws Sec. 440.-9507(1) [Mich.Stat.Ann. Sec. 19.9507(1) (Callaghan 1975)] provides, in part:

"If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this part. If the collateral is consumer

goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10% of the principal amount of the debt or the time price differential plus 10% of the cash price."

The Comments of National Conference of Commissioners and American Law Institute on this Section state:

"The Section further provides for damages where the unreasonable disposition has been concluded, and, in the case of consumer goods, states a minimum recovery."

The courts have generally held that where notice to the debtor is not given, minimum damages, at least, will be awarded. In *Atlas Credit Corp. v. Dolbow*, 193 Pa.Super. 649, 165 A.2d 704 (1960), a boat was repossessed peaceably and even with the debtor's cooperation, who assisted the secured party in transferring the U.S. Coast Guard Certificate of award. The sale was advertised and after the sale, the purchase price was credited to debtor's debt. However, no specific notice was given debtor of the time and place of sale. In affirming judgment for the debtor, the court stated:

"A reading of Sec. 9.507 of the Code as it existed at the time of resale of the boat indicates the minimum recovery in the absence of notice, though all else may have been proper. That the boat was consumer goods may be inferred from the uncontradicted testimony as to their occupation, etc."

In *In re Frye*, 9 U.C.C.Rep. 913 (U.S.D.C., S.D.Ohio, 1970) where no notice of sale of automobile was given to a trustee in bankruptcy, the court awarded trustee the minimum amount of the time price differential plus 10% of the cash price. See also *Community Management Association of Colorado Springs, Inc. v. Ford Motor Credit Co.*, 32 Colo.App. 33, 505 P.2d 1314 (1973); *In re Bryan*, 20 U.C.C.Rep. 571 (U.S.D.C., S.D. Ohio, 1976).

Plaintiff points to Section 1–106 of the Uniform Commercial Code which provides:

"The remedies provided by this act shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential or special nor penal damages may be had except as specifically provided in this act or by other rule of law."

But it is the U.C.C. itself that provides for the minimum recovery where no notice of sale is given to the debtor.

Plaintiff also cites *Gray-Taylor, Inc. v. Tennessee*, 573 S.W.2d 859 (Tex.Civ.App., 1978) Reh. den. There the trial court awarded damages to debtor because the Notice of the Sale gave the time of sale as being "2 A.M." instead of "2 P.M." This was reversed by the appellate court. However, in that case there never was a disposition of the automobile in question at the sale. The attorney for the debtor asked that the car not be sold and the sale was cancelled.

The drafters of the U.C.C. apparently recognized that under certain circumstances it would be difficult, if not impossible, to prove damages even though damages may well have occurred due to the failure of the secured party to follow the Act in disposing of repossessed collateral. Therefore, they set up a minimum damage provision on which any debtor could fall back when actual damages could not be proved.

Therefore, I would not dismiss these proceedings solely because debtor could not prove actual damages.

However, Sec. 70a of the Bankruptcy Act provides:

"The trustee of the estate of a bankrupt and his successor or successors, if any, upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition initiating a proceeding under this Act, except insofar as it is to property which is held to be exempt, to all of the following kinds of property wherever located * * * (6) rights of action arising upon contracts, or usury, or the unlawful taking or detention of or injury to his property;"

Here the rights of the debtor arose out of a contract, the security agreement. This was an asset that passed to the trustee. *In re Frye, supra; In re Bryan, supra.*

It is claimed that the trustee abandoned any claim under the U.C.C. This is not true. The trustee did abandon "all claims of bankrupt against creditors regarding truth-in-lending violations." However, there is no record that claims under the U.C.C. were abandoned. The burden is on the bankrupt to show that the trustee has abandoned a right of action. 4. Collier on Bankruptcy (14th Ed.) 1241. The failure of a trustee to assert a cause of action is not sufficient to constitute an abandonment, in the absence of an express order of the court. *Dallas Cabana, Inc. v. Hyatt Corp.,* 441 F.2d 865 (5th Cir., 1971); 4. Collier on Bankruptcy (14th Ed.) 1336.

Order may therefore be entered dismissing these proceedings but without prejudice to the trustee in bankruptcy to bring action against the credit union.