Tommy BALLARD and the Bank of Woodson, Petitioners,

v.

Bill KING, et al., Respondents.

No. C–1787.

Supreme Court of Texas.

May 11, 1983.

Rehearing Denied July 13, 1983.

George & George, Thomas W. George, Feeney, O'Hanlon & Moore, Patrick J. Feeney, Austin, for petitioners.

Day & Nabers, Dana Smith, George Day, Slagle & Haney, G. Lee Haney, Brownwood, for respondents.

McGEE, Justice.

Petitioners, Tommy Ballard and the Bank of Woodson, instituted this suit against respondents, Bill King, Cecil King and Zana Anderson. Ballard sought damages for fraudulent representations made by respondents in connection with the sale of stock in the Bank of Woodson. The Bank sought damages from respondents for breach of their fiduciary duties. The trial court, sitting without a jury, rendered judgment that Ballard recover $122,500 from Bill King, $62,074.56 from Anderson, and $43,-425.62 from Cecil King. The trial court further rendered judgment that the Bank recover $20,000 from respondents, jointly and severally.

The court of appeals reversed the trial court's judgment in favor of the Bank in part and rendered judgment that the Bank take nothing from Anderson and Cecil King. The court of appeals also reversed the trial court's judgment in favor of Bal-

lard and remanded this part of the cause for a new trial. 643 S.W.2d 457. We reverse that part of the court of appeals' judgment remanding the cause for a new trial and affirm the trial court's judgment in favor of Ballard.

Ballard purchased 82.2 percent of the outstanding shares of capital stock in the Bank from Bill King, its president, and Cecil King and Anderson, members of the Bank's board of directors. After the sale, an examination of the Bank's outstanding loans revealed a number of questionable loans and bad banking practices which occurred during Bill King's tenure as president. Consequently, state banking authorities required an infusion of an additional $200,000 into the capital stock of the Bank, of which Ballard contributed $198,000.

The thrust of Ballard's complaint was that respondents' misrepresentation of the Bank's financial condition caused him to expend an additional $198,000 beyond the purchase price of the stock. Respondents defended on the ground that Ballard was aware of King's practices and knew that additional capital would be required before he purchased the stock. They sought to demonstrate this knowledge by deposing Daniel Flynn, Deputy State Banking Commissioner, concerning a conversation he had with Ballard, in which he purportedly told Ballard that additional capital would be required. Respondents also sought by way of subpoena duces tecum to discover certain correspondence sent to Ballard and Bill Freeman, the Bank's new president, by the Texas State Banking Department.[1]

On Flynn's motion, the trial court entered a protective order precluding respondents from questioning him on the financial condition of any state bank.[2] The transcript does not reflect what action, if any, the trial court took regarding Ballard's motion to quash a subpoena duces tecum for the production of the requested correspondence.

At trial, respondents were able to show that Ballard had gone to Austin and talked to Flynn before purchasing the Bank's stock. The trial court, moreover, permitted B.C. Drinkard, a banker, to testify about a conversation he had with Ballard. According to Drinkard, in that conversation Ballard said that he had spoken with Flynn, and admitted that Flynn had told him additional capital would be required. The trial court also allowed respondents to introduce portions of the deposition of Robert Fry, an advisory director of the Bank. In his deposition, Fry testified that Ballard said "he knew at some point ... that additional capital would have to be injected into the Bank."

The court of appeals' reversal of the trial court's judgment in favor of Ballard was based on two grounds. First, and despite

---

1. Prior to trial, respondents twice served notice of their intent to take Ballard's deposition, once on March 5, 1979, and again on March 19, 1979. Each of these two notices was accompanied by a subpoena commanding Ballard to bring with him "all correspondence received by Mr. Ballard or the Woodson State Bank from the Texas Banking Commission." Similarly, on two other occasions, respondents served notice to take Freeman's deposition. The second such notice was accompanied by a subpoena commanding Freeman to bring with him "[a]ll Texas Banking Commission reports, correspondence, notations, memorandums [sic], in regard to any cease and desist orderd [sic] directed to the Bank and its officers and any and all examinations." The record and briefs filed in this court do not reveal why multiple notices were necessary. Although respondents ultimately deposed both Ballard and Freeman, the requested correspondence was never produced at either deposition.

2. The trial court's order provided as follows:
[A]t any deposition of Daniel A. Flynn, Deputy Banking Commissioner, the deponent herein, said deponent shall not be asked any question relating to the financial condition of any state bank, and that, if said deponent is asked any question relating to the financial condition of any state bank, he shall not be required to answer and he shall be protected by this order, [the following was interlined at the request of respondents' counsel] but such questions as are not answered shall be certified to this court for its determination whether such question should be answered.
At Flynn's deposition, the following question was certified by respondents' counsel: "Did you know that Tommy Ballard knew about the practices that the commission was complaining about of Bill King before he purchased the bank stock?" The trial court, however, was never asked to rule on this question.

the absence of any order in the transcript quashing the subpoena of the Bank's correspondence, the court of appeals accepted respondents' contention that the subpoena was in fact quashed, and held that this was an abuse of discretion. Secondly, the court of appeals held that the trial court abused its discretion by entering the protective order limiting the scope of Flynn's deposition. 643 S.W.2d at 463.

■ Ballard, by his first point of error, argues that the court of appeals erred in reversing the trial court's judgment because there is no order in the transcript sustaining his motion to quash the subpoena duces tecum. On motion for rehearing, the court of appeals acknowledged the absence of any such order, but held that the trial court's refusal to permit discovery of the correspondence was "clearly" reflected by the statement of facts. 643 S.W.2d at 465. We do not agree with this assessment of the record.

The statement of facts shows that two pretrial hearings concerning the scope of discovery were held, one on March 27, 1979, and another on November 21, 1979. At the first hearing, the trial court heard arguments of counsel and the Attorney General's office on the scope of Flynn's deposition. At the conclusion of this hearing, the trial court signed the protective order limiting the scope of Flynn's deposition. At the second hearing, the trial court heard arguments of counsel on various matters, including Ballard's motion to quash the subpoenas requiring the production of the Banking Commission correspondence. During the course of this hearing, the following discussion ensued:

> Mr. George [counsel for Ballard]: . . . and of course, we have already decided that the Banking Commission reports and all of them are confidential. We had the Attorney General's office up here on that.

Mr. Day [counsel for respondents]: Your honor, am I going to be able to get into this? You-all are having a discussion over there, but I do not agree with that, and—

The Court: *I haven't made any kind of ruling.* I was going to call on you. Go ahead, Mr. Day. [emphasis added].

The statement of facts, moreover, fails to show that the trial court ever made any ruling on Ballard's motion to quash at this or any subsequent hearing.

■ A point of error based on the trial court's ruling on a motion of any kind must be supported by a showing in the record that the motion was presented to and acted upon by the trial court. No such showing has been made in this case.[3] Because we sustain Ballard's first point, we do not decide whether this correspondence was privileged and not subject to discovery.

■ In his third point of error, Ballard claims that the trial court properly limited the scope of Flynn's deposition because the information sought by respondents was privileged under the Texas Banking Code of 1943, Tex.Rev.Civ.Stat.Ann. art. 342–101, *et seq.* Article 342–210 of the Banking Code provides in pertinent part:

> Subject to the provisions of [article 489b, permitting disclosure to the Federal Deposit Insurance Corporation] . . . all information obtained by the Banking Department relative to the financial condition of state banks, whether obtained through examination or otherwise, except published statements, and all files and records of said department relative thereto shall be confidential and shall not be disclosed by the Commissioner or any officer or employee of said department.

Assuming, without deciding, that the trial court erred in its interpretation of article 342–210, this was not error that was reasonably calculated to cause, and probably did cause, the rendition of an improper judg-

---

**3.** We take this opportunity to note that the predicament in which respondents now find themselves could have been avoided had counsel followed the mandate of Rule 306a: "Judges, *attorneys* and clerks are directed to use their best efforts to cause all judgments, decisions, *and orders of any kind* to be reduced to writing and signed by the trial judge with the date of signing stated therein." Tex.R.Civ.P. 306a (emphasis added).

ment. Tex.R.Civ.P. 503, 434. The evidence concerning respondents' misrepresentation of the Bank's financial condition was substantial, and the trial court's protective order did not preclude respondents from demonstrating Ballard's knowledge thereof. In view of Drinkard's testimony, Fry's deposition testimony, and the evidence that Ballard had talked to Flynn before purchasing the Bank's stock, any testimony Flynn might have given would have been merely cumulative. *Cf. Seymour v. Gillespie,* 608 S.W.2d 897, 898–99 (Tex.1980).

That part of the court of appeals' judgment remanding Ballard's cause of action for a new trial is reversed, and the trial court's judgment in favor of Ballard is affirmed. In all other respects, the court of appeals' judgment is affirmed.