**Ruben H. JOHNSON, Appellant,**

v.

**J. HIRAM MOORE, LTD., A Texas
Limited Partnership, et al.,
Appellees.**

No. 3–87–054–CV.

Court of Appeals of Texas,
Austin.

Dec. 21, 1988.

Supplemental Opinion Jan. 25, 1989.

Rehearing Denied Jan. 25, 1989.

Thomas J. Sims and J. Wayne Morrison with Fouts & Moore, Houston (on appeal only), Paul K. Hutson, Minton, Burton, Foster & Collins, Austin, for appellant.

Donald R. Taylor, Akin, Gump, Strauss, Hauer & Feld, San Antonio, Joe K. Longley, Longley & Maxwell, Austin, for appellees.

Before SHANNON, C.J., and GAMMAGE and ABOUSSIE, JJ.

SHANNON, Chief Justice.

Appellees J. Hiram Moore, Ltd., (Moore) and the law firm of Davis and Davis (Davis) sued appellant Ruben H. Johnson in the district court of Travis County for actual and exemplary damages stemming from the claimed breach of a fiduciary relationship. Upon trial to a jury, the district court rendered judgment for appellees. Subject to suggestion of remittitur, this Court will affirm the judgment.

Johnson is the sole general partner, and is also a limited partner, of 15th Street Building, Ltd., a Texas limited partnership (15th Street). The partnership built, owned, and operated an office building in Austin formerly known as the "United Bank Tower (Tower)." Appellees Moore and Davis were two of the twenty-five limited partners of 15th Street, and they were also lessees of office space in the Tower. Several other limited partners of 15th Street were also Tower lessees.

In 1981, the shell of the Tower was completed and Johnson began leasing space to tenants. Each tenant was responsible for finishing-out the interior of its office space. The partnership gave each tenant a ten dollar per square foot allowance for finishing-out its office space. Johnson had to approve each tenant's finish-out construction contract as well as any subsequent changes in the contract. Johnson also supervised each of the interior construction

jobs to insure that it met 15th Street's quality requirements.

Most of the original tenants hired one of two contractors to finish-out their office spaces. On most of the finish-out jobs, the contractors paid Johnson a fifteen percent fee. Although Johnson characterized these payments as "developer's fees," the proof was that the contractors paid the fees under "bidding rules" established by Johnson and not in exchange for services performed. Johnson received a $9,494.00 fee from Moore's contractor, a $48,000.00 fee from Davis's contractor, and a $160,000.00 fee from 15th Street's contractors doing the finish-out construction in the common areas of the Tower. In each instance, the respective contractor simply added Johnson's fee to the sum the contractor charged the tenant.

Johnson's view of the matter was that the "developer fees" were authorized by the 15th Street partnership agreement. Although some tenants knew that the contractors were paying Johnson a fee, others did not. Appellees' proof was that Johnson did not disclose to them that he was receiving the fees and that they and 15th Street were ultimately paying the fees as construction costs.

By their suit, appellees asserted that a fiduciary relationship existed between Johnson and the limited partners in 15th Street. Appellees claimed further that Johnson, in failing to disclose the fees paid by the contractors and then charged to his partners, violated the fiduciary duty Johnson owed them.

Nineteen of the other limited partners of 15th Street intervened in the lawsuit and specifically denied that Johnson had acted to the detriment of 15th Street or the limited partners by mismanagement or by breach of a fiduciary relationship. In addition, the intervenors pleaded that the 15th Street agreement authorized Johnson to collect the fees from the contractors.

In response to special issues, the jury answered that Johnson did not act in compliance with his fiduciary duty in receiving the fees from the contractors and that such failure was a proximate cause of damages to each appellee. The jury answered further that Johnson's violation of the fiduciary duty was the result of willful misconduct and conscious indifference to the rights or welfare of Moore and Davis. The jury assessed $14,494.00 as actual damages for Moore and $74,801.00 for Davis. The jury awarded exemplary damages in the sum of $463,202.52 to Moore and $694,803.78 to Davis.

The district court rendered judgment on the verdict for $1,247,301.30, with $477,696.52 to Moore and $769,604.78 to Davis.

Johnson mounts his attack on the judgment by eighty points of error. Nearly all of these points are either fragments of a main issue or are simply duplicative of appellant's other arguments. As such, this Court will treat the points of error according to subject.

By many points Johnson claims error in the court's charge and in the jury's answers to the special issues. Special issue one inquired whether Johnson acted in compliance with his fiduciary duty to Moore and Davis in the finish-out construction work on their offices. In connection with the special issue, the district court charged:

A "fiduciary duty" requires that persons engaged in a partnership, or who are about to assume such relationship, owe to each other the utmost good faith and the most scrupulous honesty in connection with partnership affairs.

In connection with this Special Issue, you are instructed that a fiduciary relationship existed, and still exists, between Ruben Johnson and the limited partners in the 15th Street Building Limited Partnership. A fiduciary must show that all aspects of the questioned transactions were fair, honest, and reasonable.

You are further instructed that each partner in a partnership business is a confidential agent of the other partners and each is required to make full disclosure of all material facts known to him with respect to partnership affairs.

The jury answered that Johnson did not act in compliance with the fiduciary duty he owed Moore and Davis.

█ Johnson argues that he owed Moore and Davis no fiduciary duty because their relationship in the questioned transactions was one of landlord-tenant and not one of partnership. Johnson's claim is not meritorious. Whether Johnson and appellees Moore and Davis occupied a landlord-tenant status is immaterial; all were partners in owning the building, and transactions to operate the building are the subject of this suit.

Persons engaged in a partnership owe to one another a high duty, one of the highest duties recognized in law, the duty to deal with one another with the utmost good faith and most scrupulous honesty. *Huffington v. Upchurch,* 532 S.W.2d 576, 579 (Tex.1976); *Johnson v. Peckham,* 132 Tex. 148, 120 S.W.2d 786, 788 (1938). Having an additional landlord tenant relationship with one's partners does not diminish this duty. Johnson's attempt to recast this case in landlord-tenant terms would make the additional relationship a complete defense to the responsibilities that Johnson accepted in his initial and primary role as general partner of 15th Street. This he cannot do.

█ In furtherance of his own interests and without disclosure to his partners, appellees Moore and Davis, Johnson tacked a fifteen percent fee onto the cost of their finish-out jobs. This Court has no difficulty in concluding that the proof supports the finding that Johnson breached the fiduciary duty owed appellees.

An additional reason exists why Johnson's position as landlord cannot supersede his fiduciary duty: he tied the two together from the beginning. In his role as general partner of 15th Street, he discussed appellees' occupancy of the building concurrently with their purchase into the partnership. Johnson induced Davis to become a tenant by offering to finance, through Johnson's bank, Davis's purchase of its partnership interest in 15th street as well as the cost of the finish-out for Davis's office space. By these efforts Johnson brought appellees' tenancy in the office building within the ambit of partnership affairs.

The points of error are overruled.

Appellees asserted claims at trial both for the 15th Street partnership's benefit and for their individual benefit. Johnson asserted that any claim for breach of fiduciary duty belonged to 15th Street and that any recovery was barred because 15th Street has ratified his actions. The district court severed the claims asserted against Johnson for the benefit of 15th Street into a separate cause. That severed cause presently pends in district court. The district court then went forward in the remaining part of the original suit and rendered judgment for actual and exemplary damages based on the successful *individual* claims of appellees. It is from that judgment that this appeal is taken. By numerous points Johnson reasserts his position that any breach of duty has been ratified. In light of the important procedural background, this position suggests that the partnership's decision not to pursue Johnson's breach of duty necessarily prevents any recovery by appellees on their individual claims.

█ Appellees, *not 15th Street,* paid the finish-out construction fees for their offices. Johnson received payments from those fees. Johnson's failure to disclose to appellees the fact that he would receive fees from their construction contracts was the breach of a duty owed to *appellees.* For a breach of the duty owed them, appellees were entitled to seek recovery from Johnson for actual and exemplary damages. The partnership has no legally cognizable claim to share in appellees' individual recoveries from Johnson. In the same manner, the partnership's ratification of Johnson's acts cannot serve to bar appellees' individual claims against Johnson. Only appellees, and not the partnership, are capable of ratifying any acts by Johnson as to their individual claims. *Cf. Chien v. Chen,* 759 S.W.2d 484 (Tex.App.—Austin, 1988) (the authority of a partner to act on behalf of the partnership).

Accordingly, although 15th Street may assert in the severed cause its ownership of the claim for Johnson's claimed breach of a fiduciary duty owed the partnership, such

assertion is in no way relevant to this appeal.

By other points of error, Johnson claims alternatively that the fees he took were authorized by the terms of the partnership agreement. Specifically, Johnson relies upon Section 5.1(d) and 9.1 of the partnership agreement as authority for receipt of the questioned fees. These sections provide in pertinent part as follows:

5.1(d) Rights of General Partner as Manager.

\*     \*     \*     \*     \*     \*

*The General Partner may,* subject to the provisions of Section 9.1 hereof, at the expense of the Partnership engage a third party, the General Partner or an affiliate of a General Partner ... to lease, *manage, make ready, plan, decorate* and/or refurbish the Tract and the Improvements [of the United Bank Tower]. (emphasis added).

9.1 Compensation to the General Partner's Affiliates and Others.

The General Partner shall be entitled to enter into any and all contracts with third parties, *himself* or with an affiliate of himself, *including contracts pursuant to which the contracting party will perform any function which the General Partner is obligated to perform hereunder* including property management services ... provided, however, that all such performance contracts shall be on terms at no greater rates than prevailing market rates for comparable properties and similar functions in the area.... Each Limited Partner, by his execution of a counterpart of this Agreement agrees that any and all fees, commissions and other considerations received by the *General Partner* or any and all affiliates pursuant to contracts permitted under this Article IX shall be the sole and exclusive property of the recipient, that the Partnership shall have no claim whatsoever therein, and that the participation by the General Partner or an affiliate in any such permitted contract shall not constitute a breach by the General Partner or the participant of any duty either of them may owe the Limited

Partners or the Partnership, either under the terms hereof or by law. (emphasis added).

■ Johnson did not advance section 5.1(d) in district court as authority for receipt of the fees. Instead, he insisted at trial that the fees were authorized by Section 9.1. Because Johnson did not properly raise his contention concerning Section 5.1(d) in district court, he cannot raise the issue in this Court. *Gray–Taylor, Inc. v. Tennessee,* 587 S.W.2d 668, 671 (Tex.1979).

Section 9.1 is specifically limited by section 7.1 which provides:

Section 7.1 *Fees.* Except as provided elsewhere in this Partnership Agreement for management fees and leasing commissions fees as provided in Section 9.1, the General Partner's fee and the interim loan guaranty fee, no Partner shall receive compensation for services rendered in the initial development, construction and leasing of the Partnership property.

In our opinion, section 7.1 permitted Johnson to receive four types of fees from the initial development, construction, and leasing of the building; (1) management fees under Section 9.1; (2) leasing commissions under Section 9.1; (3) the general partner's fee; and (4) the interim loan guaranty fee. At trial, Johnson, himself, admitted that the "developer's fee" fit none of these categories. The points of error are overruled.

■ By four points of error, Johnson asserts error in the district court's admission of other allegedly wrongful acts similar in nature to those complained of in this cause. The points are overruled. "Other acts" evidence is admissible both to show willful intent in support of exemplary damages, *Burleson v. Finley,* 581 S.W.2d 304, 309 (Tex.Civ.App.1979, writ ref'd n.r.e.) and to show a plan or scheme, *Aztec Life Insurance Company v. Dellana,* 667 S.W.2d 911, 915 (Tex.App.1984, orig. mand. proceeding).

Johnson claims by point of error forty-eight that the district court erred in permitting Becky Garner to testify because appellees had not listed her as a witness in

response to Johnson's interrogatory. Garner was the secretary of a finish-out contractor and had been present at a conference with the contractor and Johnson when the "development fees" were discussed. The district court concluded that Garner was not included within the class of witnesses about which the interrogatory inquired, and therefore the failure to include her name did not bar her testimony. We have concluded, however, that it is unnecessary to determine whether or not the district court erred in permitting Garner to testify because her testimony was cumulative of that of the contractor. *Ballard v. King,* 652 S.W.2d 767, 769–770 (Tex.1983); Tex.R.App.Pro.Ann. 81(b)(1) (Supp.1988). Point of error forty-eight is overruled.

■ Johnson complains of the refusal of the district court to permit certain of his witnesses to testify. By interrogatories appellees had requested the identity of persons having knowledge of the facts underlying the lawsuit and the identity of any expert witnesses. In response to the interrogatory, Johnson listed (1) the names of certain persons; (2) "all limited partners"; and (3) an accounting firm. Twenty days before trial, Johnson supplemented his answers to add the names of several more persons. Appellees moved to exclude the testimony of those persons.

Because Johnson's supplemental response was not timely, exclusion of the proferred witnesses was "automatic" unless Johnson demonstrated "good cause" to allow their testimony. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297 (Tex.1986); Tex.R.Civ. P. 215(5) (Supp.1988). Johnson points out, however, that appellees were aware of the identity of the proferred witnesses because their identity had been disclosed in a previous proceeding in United States district court. The points are overruled. Proof showing lack of surprise and lack of prejudice to the opponent is irrelevant to showing good cause. *Morrow v. H.E.B., Inc., supra; Investors, Inc. v. Hadley,* 738 S.W.2d 737, 742–743 (Tex.App.1987, writ denied).

Johnson complains by point of error fifty-three of the court's admission of evidence concerning Nicholas Kralj's suit and its settlement against one of the finishing-out contractors. In his brief, Johnson claims that he objected to evidence relating to the Kralj lawsuit and settlement "on the grounds that it was irrelevant and because its probative value was outweighed by its prejudice, confusion, and misleading the jury" and because it was "settled." At trial, however, Johnson objected only on the grounds that the evidence was "an extraneous transaction" and was a settlement discussion of the same fact situation as that involved in this appeal.

At trial Kralj testified before the contractor did. On direct examination, and without objection, Kralj testified at length concerning his lawsuit against the contractor and its settlement. On cross-examination, Johnson's counsel inquired into the Kralj lawsuit. Johnson did not request a "running" objection until immediately before the contractor appeared as a witness. At that juncture, proof of the Kralj suit and its settlement was before the jury without objection. We conclude that additional evidence regarding the Kralj suit was cumulative of evidence admitted without objection. *Ballard, supra;* Tex.R.App.P.Ann. 81(b)(1). The point is overruled.

■ As mentioned above, appellees filed a motion to sever their individual causes for actual and exemplary damages and attorney's fees from the remainder of the suit. The motion was filed after the jury had returned its verdict. The express purpose of appellees' motion to sever was to allow a final and appealable judgment to be rendered in appellees' suit for damages and attorney's fees. Johnson complains by several points that the district court erred in severing the causes *after* submission of the causes to the jury. As authority, he relies upon Tex.R.Civ.P.Ann. 41 (Supp.1988) and an opinion of this Court, *Williams v. Cassel,* 515 S.W.2d 403, 406 (Tex.Civ.App.1974, no writ).

The language from Rule 41 on which appellant relies is:

... actions which have been improperly joined may be severed and each ground of recovery improperly joined may be

docketed as a separate suit between the same parties, by order of the court on motion of any party or on its own initiative at any stage of the action, *before* the time of submission to the jury ... (emphasis added).

In *Cassel,* the plaintiff filed suit to establish the existence of an easement across the defendants' land. The defendants contested the existence of an easement and filed a counterclaim for damages. After a bench trial, the trial court rendered judgment that the plaintiff was not entitled to an easement. Upon its own motion, the trial court ordered a severance of the defendants' counterclaim for damages. The defendants had introduced no proof in support of their counterclaim for damages. This Court held the order of severance to be an abuse of discretion and rendered judgment that the defendants take nothing. It appears that the severance was an abuse of discretion because no basis existed for the trial court to retain jurisdiction over defendants' unsuccessful counterclaim for damages. To our knowledge, *Cassel* has never been cited as authority for the point here involved.

Appellant correctly directs our attention to Rule 41, but he relies on a part of the rule that is not applicable: "actions which have been improperly joined." There is no contention that the actions in this appeal were improperly joined. Only the language of Rule 41 that deals with improperly joined actions, among other situations, restricts the authority of the district court. The general rule, however, has no restriction. "Any claim against a party may be severed and proceeded with separately." Tex.R.Civ.P.Ann. 41 (Supp.1988). Under this language, it has long been understood that the district court has broad discretion in severing causes. *Hamilton v. Hamilton,* 154 Tex. 511, 280 S.W.2d 588, 591 (1955). The court's severance order will not be disturbed on appeal except for abuse of discretion. *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 682 (1956). The Supreme Court has recognized that severance after summary judgment in effort to expedite appellate review is not an abuse of

discretion. *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 525–526 (Tex.1982).

This Court will follow the holding in *Cherokee Water* and, accordingly, we conclude that the district court did not abuse its discretion in ordering the severance. The points are overruled.

Johnson has other points of error, some of which are neither briefed nor argued. Those points are waived. *Rayburn v. Giles,* 182 S.W.2d 9, 14 (Tex.Civ.App.1944, writ ref'd). The points remaining, except damages, have been considered; are without merit; and are hereby overruled.

■ Finally, Johnson maintains by four points of error that the district court erred by not ordering a remittitur of exemplary damages. The jury awarded actual and exemplary damages in the amount of $74,801.00 and $694,803.78, respectively, to Davis and in the amount of $14,494.00 and $463,202.52 to Moore. Davis's exemplary damages are over nine times as large as his actual damages. By contrast, the ratio between Moore's awards is greater than thirty-three times. Johnson insists that in each case the amount of exemplary damages is excessive and not reasonably proportioned to actual damages.

■ When it believes that the trial court erred in refusing to suggest a remittitur, the court of appeals may itself suggest a remittitur of the excess pursuant to Tex.R.App.P.Ann. 85(b) (Supp.1988). If a remittitur is not then filed, the appellate court may reverse the trial court judgment.

■ Bearing in mind that "exemplary damages must be reasonably proportioned to actual damages," *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981), the court of appeals is required to exercise its sound judgment and discretion in the ascertainment of what amount would be reasonable compensation and to treat the balance as excess. *Wilson v. Freeman,* 108 Tex. 121, 185 S.W. 993 (1916); *see Larson v. Cactus Utility Company,* 730 S.W.2d 640, 641 (Tex.1987). The Supreme Court directs the court of appeals, in determining whether the jury's verdict of exemplary damages is excessive, to consid-

er many factors, including (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo National Bank v. Kraus, supra;* *Tatum v. Preston Carter Co.,* 702 S.W.2d 186 (Tex.1986). Whether the award of exemplary damages is excessive is a question of fact on which the judgment of the court of appeals is final. *Tatum v. Preston Carter Co., supra; Alamo National Bank v. Kraus, supra; Impson v. Structural Metals, Inc.,* 487 S.W.2d 694, 697 (Tex.1972); *Pon Lip Chew v. Gilliland,* 398 S.W.2d 98, 103 (Tex.1965).

In considering the nature of the wrong and the character and culpability of Johnson's conduct, this Court recognizes that the jury found, on sufficient evidence, that Johnson violated his fiduciary duty to Davis and Moore when he took the "developer's fees" in the finish-out work. In so doing, Johnson acted entirely in his own interest and followed the morals of the market place instead of the strict loyalty demanded of a fiduciary. Johnson has engaged in similar transactions in the past, and he defends the seemliness of this practice. Although neither Davis's nor Moore's actual financial loss was ruinous, Johnson's conduct, in our view, offends the public's sense of justice and propriety and merits punishment in an amount sufficient to deter similar disloyalty on the part of other fiduciaries.

At the same time, there is no proof that Johnson was maliciously disposed personally toward either Davis or Moore; instead, he was simply determined to take pecuniary advantage of them. Johnson breached the same fiduciary duty owed Davis and Moore under substantially the same circumstances. Moore suffered less financial loss than did Davis, yet the jury awarded him a much greater ratio of exemplary damages to actual damages than it awarded to Davis. We do not find Johnson's conduct toward Moore to be more egregious than his conduct toward Davis.

Applying the factors enumerated in *Alamo, supra,* exercising our sound judgment and discretion, *Wilson, supra,* and considering Davis's actual damages, we consider the jury's award of exemplary damages to Davis to be reasonable. This Court concludes, however, that the award of exemplary damages to Moore was unreasonable. Because Johnson's actions against each appellee are basically identical, and because the harm suffered by each appellee is the same except for size, each appellee's ratio between actual and exemplary damages should be approximately comparable to the other's ratio. As such, a reasonable award of exemplary damages to Moore would be no more than $134,649.26.

Accordingly this Court finds the judgment for Moore to be excessive and suggests a remittitur of $328,553.26, *i.e.,* the difference between a reasonable award and the actual award. If Moore files in this Court, within fifteen days from the date of this opinion, a remittitur of $328,553.26, then the judgment of the district court as to Moore will be reformed and affirmed with $134,649.26 in exemplary damages. If remittitur is not filed, Moore's cause against Johnson will be severed, the judgment for Moore will be reversed and the cause will be remanded to the district court for trial. *Larson v. Cactus Utility Company, supra.*

The judgment for Davis is in all things affirmed.

GAMMAGE, Justice, concurring and dissenting.

I concur with the majority opinion affirming the judgment of the trial court but disagree with the suggestion of remittitur.

SUPPLEMENTAL OPINION

SHANNON, Chief Justice.

J. Hiram Moore, Ltd., appellee, filed a remittitur of $328,553.26 on January 3, 1989, in compliance with the suggestion of remittitur by this Court, in our opinion of December 21, 1988. The judgment of the district court for appellee J. Hiram Moore, Ltd., is reduced by the amount of such

remittitur, and as so modified, the judgment of the district court is in all things affirmed.