**RAYBURN et al. v. GILES.**

No. 11420.

Court of Civil Appeals of Texas.
San Antonio.

Aug. 2, 1944.

Rehearing Denied Aug. 30, 1944.

10

Bernard A. Golding, of Houston, and Davis, Hall, Clemens & Knight, of San Antonio, for appellants.

George L. Conger and Dent Taylor, both of San Antonio, for appellee.

SMITH, Chief Justice.

This is the second appeal in this cause. Giles v. Rayburn et al., Tex.Civ.App., 173 S.W.2d 371. Reference is made to the opinion in the prior appeal for a detailed statement of the main facts in the case. The suit was originally brought by appellee, Giles, against J. E. Rayburn, Lennis Brice, J. S. Futch and G. E. Lockley, alleging that as co-partners they organized and operated a trucking business, into which Lockley contributed certain personal property of an agreed value to be paid him by the remaining four partners who were to contribute their personal services. Each of the five partners was to receive $200 per month salary and share in equal parts the profits and losses of the business. The concern was organized on March 9, 1942, and operated under said agreement until August 11, 1942, when Giles summarily quit the venture and joined up with a competitor in the same business. He not only was paid all the salary accruing to him under the agreement, but overdrew that account in the sum of $293.03. There was no distribution of the net profits of the venture during Giles' connection with it, for, although such profits were shown to be substantial, no dividends had been ascertained or declared thereon during Giles' tenure. In his suit Giles sought to recover one-fifth of the value of the assets of the business at the close of his connection with it, and one-fifth of the net profits earned during that connection. The cause was tried to a jury on special issues, in response to which judgment was rendered in favor of Giles, in accordance with his prayer, against Rayburn, Lockley and Brice, who have appealed.

In response to special issues, submitted by the trial judge under appropriate instructions not complained of on this appeal, the jury found that appellants and appellee were copartners in the business involved; that the market value of the trucks and trailers in use in said venture at the time appellee severed his relationship with the business was $24,000; that the market value of the Railroad Commission permit under which the business was operated was $10,000; that "the amount of the overcharge, if any, on freight hauled by Modern Delivery Service for the United States Government during the dates of from March 9, 1942, to August 11, 1942," was "none." We are of the opinion that there was material evidence to support the several findings of the jury, which therefore are binding upon this Court. It follows that the judgment rendered in pursuance of those findings must be affirmed, unless, indeed, material errors of law occurred in

the proceedings and are efficiently presented in this appeal.

One of the alleged assets of the business involved was a temporary permit issued by the Railroad Commission of Texas to appellant G. E. Lockley doing business as Modern Delivery Service, prior to the organization of the venture here involved. The record shows that at the inception of the venture Lockley owned a temporary permit issued by the Railroad Commission of Texas to Lockley d/b/a Modern Delivery Service; that when this venture was entered into Lockley contributed said permit to the venture, at an agreed valuation of $1500. The permit was afterwards amended by the Railroad Commission to cover the operations of the new venture, and the concern operates thereon. Lockley also contributed to the business certain trucks theretofore used by him in the operation of his business at Houston. Lockley contributed the permit and trucks to the business at an agreed valuation of $1500 for the permit and $5200, net, for the trucks. The other partners were to pay to Lockley the sum of $1100 each to compensate him for those contributions to the assets of the firm. By this process those assets became the property of the partnership.

Appellants first complain of the admission of the testimony of certain witnesses as to the market value of the Railroad Commission permit discussed above. This testimony was elicited by appellee to ascertain the value of the permit in determining the amount of his one-fifth interest in the firm's assets.

Upon that issue appellee, Giles, testified on direct examination, in effect, that he had formerly worked for C. & F. Motor Freight Lines, engaged in a business similar to Modern Delivery Service; that at that time C. & F. was the only company of that kind in existence in this State, and the second company was Modern Delivery Service; that he was familiar with the nature and amount of business and probable profits of the C. & F. business; that at that time there were about seven such companies. He was then asked and answered these questions:

"Q. From your knowledge of the operation of the C. & F. and your knowledge of the operation of Modern Delivery Service and your knowledge of a number of other permits that are in existence, I will ask you to state whether or not you have any idea about the value of that permit? * * *

A. Yes, I have an idea, I know ten per cent of a similar permit sold for $4000.00.

"Q. Who sold the permit and who bought it? A. Mr. C. E. Isom owned the ten per cent and Dent Taylor bought it from him.

"Q. That was an interest in the C. & F. Motor Freight Lines? A. Yes, sir.

"Q. He had a ten per cent interest and sold it for $4000.00? A. Yes, sir.

"Q. Do you know of any other sales of any interest in a permit? A. Not offhand; no, sir."

Giles also testified:

"Q. From what you know about the nature of the business and the sale of this permit, do you have any idea what the value of the permit of Modern Delivery Service was on August 11th, 1942?

"Mr. Golding (for appellants): We object to that because this gentleman hasn't shown himself qualified.

"The Court: I will overrule the objection.

"Mr. Golding: We except.

"A. At least $25,000.00.

"Q. At that time had the permit been made permanent or was it a temporary operation? A. It was still temporary.

"Q. When you say $25,000, do you mean the naked permit, or do you mean the permit together with all equipment? A. Just the permit by itself.

"Q. The permit has now been made permanent, hasn't it? A. Yes, sir.

"Q. What, in your opinion, is the value of the permit today?

"Mr. Golding: We object to that for the same reason. He hasn't shown himself qualified.

"The Court: I will overrule the objection.

"Mr. Golding: We except.

"A. It is pretty high.

"Q. What do you think it would sell for on the market, Mr. Giles? A. At least, $30,000.00."

On cross-examination Giles testified:

"Q. And you say Dent Taylor, one of your own lawyers, sometime ago purchased an alleged interest in the permit from C. E. Isom? A. Yes, sir.

"Q. When was that alleged purchase made? A. I don't know the exact date.

"Q. Was it in 1942? A. No, sir. This year.

"Q. 1943? A. Yes, sir.

"Q. And you say $4000.00 was paid? A. Yes, sir.

"Q. Didn't that require the approval of the Railroad Commission of the State of Texas, before any transfer of any interest in that permit was consummated? A. I don't believe it does because it is incorporated.

"Q. I am asking you, didn't it in that instance? A. Not that I know of.

"Q. As far as you know this alleged purchase by one of your lawyers was for an alleged interest in the permit? Is that right? A. That's all they owned.

"Q. That's all they owned? A. Yes, sir.

"Q. Do you know of any other sale in the State of Texas of an interest in a permit, other than the one from C. E. Isom to your lawyer, who also had an interest in the C. & F. Freight Lines? A. I have heard of a number of them; yes, sir.

"Q. You have heard of a number of them? A. Yes, sir.

"Q. When did you first learn of these other alleged sales? A. Not so very long ago.

"Q. Did you advise your lawyer about those alleged sales? A. No, sir.

"Q. Did you make any attempt to run them down so as to bring these folks into court? A. No, sir. It wasn't any of my concern."

Appellants objected to this testimony on the ground that the witness was not shown to be qualified.

The general rule is that the trial judge possesses a wide discretion in determining the qualification of a witness who offers his opinion as to the value of a particular personal property, and the judge's action in admitting that character of testimony will not be disturbed in the absence of a clear showing of abuse of that discretion. 19 Tex.Jur. 76, § 50. In this case, in view of the scarcity of similar transactions like that involved, and of the witness' familiarity with the commodity in question and of its essential nature as related to such business and with the operations of Modern Delivery Service, we cannot say that the trial judge abused his discretion in admitting the testimony complained of. If it appeared, as in fact it does, that the source of the witness' knowledge was scant, and his interest obvious, we think the vice in his

testimony related more to its weight than its admissibility. The same conclusion applies to appellants' objections to the testimony of C. E. Isom, which was stronger than that of appellee. We overrule appellants' point one and other points grouped and briefed along with point one. It is obvious from the finding of the jury that they did minimize the weight of the testimony of those witnesses in arriving at the value of the Railroad Commission permit, for, while Giles gave it as his opinion that the permit was' worth $30,000, and Isom estimated its value to be from $12,000 to $15,000, the jury found it to be only $10,000.

Also, we overrule appellants' complaint of the admission of the testimony of appellee's witnesses Isom and Futch as to the market value of the trucks and trailers owned by the partnership at the time appellee severed his connection with the firm. According to appellants' brief, the objection of appellants to the testimony of those witnesses was that it "was hearsay, not competent for any purpose, and was otherwise inadmissible." We are of the opinion that the trial judge did not abuse his discretion in admitting the testimony as against the stated objections. And we conclude that when all the relevant testimony in the case is considered in the light most favorable to appellee, as it must be, it was sufficient to support the jury's findings as to the values of the permit and the trucks and trailers. For that further reason we overrule appellants' point one and the points grouped and briefed by appellants along with point one. In truth, many of those points are improperly grouped and could well be disregarded, since some of them raise distinct questions of law and are wholly unrelated to each other.

In their brief appellants group their points four, twelve and thirteen. Point four is, simply and only, that "the court erred in overruling each and all of appellants' exceptions to appellee's pleadings." As there are some twenty exceptions in appellants' answer, each raising a separate and distinct question of law, the point is obviously multifarious and too general to invoke consideration in this appeal. This is particularly so since the assignment of error on which the point is based is equally general.

In their argument under their twelfth point appellants complain of the granting of a temporary injunction restraining them from disposing of any of the firm's

assets. That point, nor any other in appellants' brief, relates to the injunction, and for that reason the complaint cannot have consideration here. It seems sufficient to say, as well, that the temporary injunction, issued at the inception of the case, expired by operation of law when the case was first tried on the merits, late in 1942, and the injunction was not made permanent. The question of injunction is not in the case upon the record or presentation.

But, under their twelfth point appellants do efficiently raise objections to the appointment of a receiver of the partnership properties with instructions to sell the same and pay off the judgment with proceeds from sales. The applicable statute provides for such appointment "in an action * * * between partners or others jointly owning or interested in any property or fund, * * * *where it is shown that the property or fund is in danger of being lost, removed or materially injured."* (Emphasis ours.) Art. 2293, Subd. 1, R.S. 1925.

In the statement under point twelve appellants assert that: "The Court granted a Receivership in this case, without any testimony whatsoever being offered by way of establishing that the business was in danger of being lost, moved or materially injured. No evidence was offered to show that the business was being mismanaged. On the contrary, the evidence shows that the business was being properly operated, and no danger existed as to the property or funds being in danger of removal or injured, in any manner." In his reply brief appellee does not in any way question those assertions, or any part of them, or set out any evidence in substance or otherwise showing or tending to show any necessity for the appointment of a receiver by reason of any threat or danger of damage, loss or removal of partnership assets. In this situation we take the statement in appellants' brief, that there was no testimony to support appointment of a receiver, as true. Rule 418, Vernon's Tex.Civ.Procedure.

The uniform rule is, that in order to procure a receiver of a firm's assets the complaining partner must not only show that the controversy is one between partners, but that if a receiver is not appointed the complainant's interest in the partnership will probably be lost, destroyed or removed. 36 Tex.Jur. p. 41, § 16. Under that rule, and in view of the unchallenged statement in appellants' brief that there was no

showing that if no receiver be appointed appellee's interest in the business would probably be lost, removed or destroyed, the trial court erred in appointing a receiver.

Appellants have grouped their points 5, 6, 7, 9, 10, 14, 15 and 16. None of the questions raised under those points are related, none followed by pertinent statement, except points 14, 15 and 16. Points 5, 6, 7, 9 and 10 are not briefed and are therefore waived.

Under point 14 appellants contend that no partnership relation was shown to exist between or among the parties. The statement under this point is incomplete and partial. Appellants' contentions are, in effect, that the evidence was insufficient on the partnership issues of sharing profits and losses. The evidence seems to be undisputed that Lockley contributed to the business the Railroad Commission permit, and certain trucks and trailers, all at agreed values to be paid to him in equal parts by his co-adventurers, and became the properties of the business, and all were to receive a drawing account or salary of $200 per month for their personal services and one-fifth of the net profits of the concern. Appellee and another witness each testified that the five partners were to share equally in the profits of the business, and were also to share in its losses as well. This evidence amply raised the fact issue of partnership, and the jury's affirmative findings thereon are binding on this Court.

Under the same group appellants join the wholly unrelated contention, raised in their fifteenth point, that the evidence showed that in the course of its operation the firm had overcharged the government for hauling services in an aggregate amount of more than $5000, one-fifth of which should be charged against appellee's share of the net proceeds of the firm's operations during appellee's tenure with the venture. The jury found that there were no such overcharges collected by the firm, and the trial judge approved the finding and rendered judgment accordingly. The only testimony tending to support the claim of overcharges was adduced from one of appellant Lockley's employees, from his own interpretation of rates alleged to be chargeable upon some 500 separate items of material hauled by the firm for the government. In view of this witness' relation to appellant Lockley, his interest in the matter under inquiry, and other circumstances bearing upon

the credibility of the witness and the weight to be given his testimony, we cannot say the jury was bound to give conclusive credence to his testimony, or that their finding was not authorized under the record.

In their sixteenth point appellants complain of the argument made to the jury by appellee's counsel. The point is not supported by any appropriate statement, nor is it supported by proper bill of exception, and will therefore be disregarded.

We have considered and discussed all the questions efficiently raised in appellants' brief, and finding no reversible error presented in the record, except the action of the trial court in appointing a receiver for the firm's assets, it is ordered that the judgment be reversed insofar as it decreed the appointment of a receiver, and the receivership be vacated, but in all other respects the judgment will be affirmed, at the cost of appellee.

Reversed and rendered in part; in part affirmed.