Gus MECEY, Appellant,

v.

Henry SEGGERN et ux., Appellees.

No. 13007.

Court of Civil Appeals of Texas, Austin.

March 12, 1980.

Rehearing Denied April 16, 1980.

tions, and sought to recover statutory penalties, as provided by Tex.Rev.Civ.Stat.Ann. art. 5069–1.06 (1971), in the amount of $70,-916.25 plus attorney's fees.

Mecey answered by specially denying that he charged the Seggerns usurious interest, by filing a cross-action for sums lent to the Seggerns but never repaid, and by counterclaiming for $100,000 in damages for an alleged slander by Henry Seggern. The slander cause of action was subsequently severed and the usury suit proceeded to trial on October 23, 1978.

Pursuant to a jury verdict, rendered in response to special issues, the trial court entered judgment in November of 1978 that the Seggerns be awarded $51,675 in statutory penalties, and $15,000 in attorney's fees. The judgment also provided for an additional $6,500 in attorney's fees if appeal was taken to the Court of Civil Appeals, and $4,000 if subsequently appealed to the Supreme Court. Mecey timely perfected his appeal to this Court and is before us on twelve points of error.

We overrule all points of error and affirm the judgment of the trial court.

Harriet Samon Owen, Austin, for appellant.

Mark W. Owen, Owen, Jones & Bogart, Elgin, for appellees.

PHILLIPS, Chief Justice.

Between the years 1973 and 1976, appellees Henry and Molly Seggern, ranchers in Elgin, entered into approximately seven oral loan transactions and one written note with appellant Gus Mecey, owner and operator of a local tavern. Mecey advanced sums to the Seggerns for various farm improvements, feed, and a new truck. At the time of filing of suit in October, 1976, five of the loans had been repaid in full, two were not repaid, and one was paid in part.

The Seggerns filed suit against Mecey alleging that he had contracted for or received usurious interest on these transac-

I.

Initially, appellant complains that the trial court erred in holding oral contracts to lend money at interest to be governed by the usury statutes and, further, in failing to submit special issues requiring specific findings as to the existence of the elements of a contract.

"Article 5069–1.06 provides that any person who 'contracts for, charges or receives' interest in excess of the amount authorized by law shall be liable for the penalties set forth in the article. . . . By describing the conditions precedent to recovery of penalties in the disjunctive, the Legislature made it clear that *only one such condition need occur to trigger penalties;* either a contract for, a charge of or receipt of usurious interest." *Windhorst v. Adcock Pipe and Supply*, 547 S.W.2d 260 (Tex.1977). (Emphasis added).

Article 5069–1.02 provides:

"Except as otherwise fixed by law, the maximum rate of interest shall be ten percent per annum. A greater rate of interest than ten percent per annum unless otherwise authorized by law shall be deemed usurious. *All contracts for usury are contrary to public policy and shall be subject to the appropriate penalties prescribed in Article 1.06 of this Subtitle.*" (Emphasis added).

This provision mirrors that in Tex.Const. art. XVI, § 11 (Supp.1980), as amended November 8, 1960:

". . . [I]n the absence of legislation fixing maximum rates of interest *all contracts for a greater rate of interest than ten percentum (10%) per annum shall be deemed usurious . . . .*" (Emphasis added).

Both the Constitution and Article 5069–1.02 speak in terms of "all contracts." "All contracts" includes both oral and written agreements. *Glenn v. McCarty*, 130 S.W.2d 295, 301–2 (Tex.Civ.App.—Amarillo), *aff'd*, 137 Tex. 608, 155 S.W.2d 912 (1941); *Auto-credit of Fort Worth, Inc. v. Pritchett*, 223 S.W.2d 951 (Tex.Civ.App.—Fort Worth 1949, writ dism'd).

The January 1973 loan of $3,000, May 1973 loan of $3,000, February 1974 loan of $8,000, 1975 loan of $7,900, and the 1975 fertilizer loan of $4,000 were completed transactions in which it was demonstrated that interest in excess of 10% had been charged and/or received by Mecey. This charge or receipt of usurious interest rightfully triggered the penalty provisions of Article 5069–1.06.

The $4,000 truck loan of 1973, the 1976 $7,500 note, and the 1976 $1,500 loan were transactions not fully executed. Appellees contend that ". . . there is no significant reason to differentiate between whether the ground of recovery is contracting for 'usurious interest' or 'charging' usurious interest. Here . . . Mecey demanded payment of (or charged) the inter-est he contracted for." As to the truck loan of 1973, demand can be shown by a memo containing the language: "Due—7/15/75—$1,900" and "Due 7/15/76—$1,700" and certain testimony by Mecey about this memo. Demand was shown as to the 1976 $7,500 note by a letter from the Bastrop County Attorney demanding payment from the Seggerns and by certain testimony by Henry Seggern. The letter from the County Attorney also dealt with the 1976 $1,500 loan. Demand was further shown by Mecey's attempt to cash the Seggerns' $1,800 check.

In reviewing the meaning of the word "charging," this Court in *Moore v. Sabine National Bank of Port Arthur*, 527 S.W.2d 209, 212 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.), determined that ". . . a charge could be . . . 'an act by the promisee *constituting or implying a demand for its payment*, e. g., the inclusion in a statement of indebtedness submitted to the debtor.'" (Emphasis added). See also: *Tanner Development Company v. Ferguson*, 561 S.W.2d 777, 788–9 (Tex.1977). The above testimony and exhibits are evidence of the charging of interest above that allowed by law. As such, it was not required that the trial court require a finding as to the elements of a contract. *Windhorst v. Adcock Pipe and Supply, supra; Tanner Development Company v. Ferguson, supra.*

Mecey claims that this cause is governed by Articles 5069–1.03 and 5069–1.04. We disagree. In the case at bar, we are not called upon to determine what rate of interest *should have been allowed between the parties*, but if the interest *actually charged* by Mecey was, as a matter of law, usurious. Thus, Articles 5069–1.03 and 5069–1.04 are inapplicable.

Appellant also alleges that the usury statutes apply only to those who lend in the ordinary course of their business. Article 5069–1.06 provides that "*any person* who contracts for, charges or receives" usurious interest is liable for the penalties under the statute. Article 5069–1.01(e) defines a person as:

". . . an individual, partnership, corporation, joint venture, trust, association or any legal entity, *however organized.*" (Emphasis added).

Mecey is an individual. The statute requires no precise organization. The record shows that more than one transaction was entered into by the parties. The abundance of checks, stubs and memoranda that are exhibits in this case, show at least some organization on the part of Mecey. Accordingly, Mecey was within the class of persons regulated by the usury laws.

Mecey argues, under point of error one, that the application of the usury statutes to him, as an individual, violates the due process requirements of the 14th Amendment to the United States Constitution and Article I, §§ 13 and 19 of the Texas Constitution. Specifically, he claims that Articles 5069–1.-03 and 5069–1.04 are unconstitutionally vague when applied to an oral contract by a lender not organized to lend money.

As has been demonstrated, these two provisions are inapplicable to the case at bar, and, thus, we are not required to reach the constitutional argument as to them. This cause is governed solely by the provisions of Articles 5069–1.02 and 5069–1.06. Appellant does not argue the constitutionality of these statutes. Under Rule 418(e), Texas Rules of Civil Procedure (Supp.1980), points of error are required to be supported by argument and authority, and if not supported, the points are waived. *Rayburn v. Giles*, 182 S.W.2d 9 (Tex.Civ.App. San Antonio 1944, writ ref'd); *Ranger Insurance Co. v. Rogers*, 530 S.W.2d 162 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.).

■ Appellant in point of error three complains that ". . . the Court erred

in entering judgment . . . on the verdict of triple interest and return of principal. . . ."

Article 5069–1.06 [1] provides:

"(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall *forfeit to the obligor twice the amount* of interest contracted for, charged or received . . .

"(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed . . . shall forfeit *as an additional penalty, all principal as well as interest* . . ." (Emphasis added).

The trial court allowed recovery of principal, interest and double interest on each transaction where the amount of interest paid was double that allowed by statute. It was correct in so doing. ". . . Subsection two authorizes a recovery of double the interest rate contracted for, charged or received, a refund of all interest paid and other charges, and a forfeiture of all of the principal." Symposium, *Texas Usury Law*, 10 St. Mary's L.J. 687, 861–2 (1979); *Lafferty v. A.E.M. Developers and Builders Co.*, 483 S.W.2d 279, 282 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.); *Watson v. Cargill, Inc., Nutrena Division*, 573 S.W.2d 35, 42 (Tex.Civ.App.—Waco 1978, writ ref'd n. r. e.).

■ Mecey also asserts that there is ". . . no evidence that the insertion of 10% interest [in a 1975 $7,500 note] was not the result of a bona fide error."

Here, Mecey seeks to come within the provision of Article 5069–1.06(1) which pro-

---

1. Article 5069–1.06(1) was amended by Acts 1979, 66th Leg., p. 604, ch. 281, § 1, effective Aug. 27, 1979:

"(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of

interest allowed by law, and reasonable attorney fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided, that there shall be no penalty for any usurious interest which results from an accidental and bona fide error."
As this amendment was not enacted until after the passage of all time periods pertinent to this appeal, it is not controlling of this cause.

vides: ". . . there shall be no penalty for a violation which results from an accidental and bona fide error."

In determining whether there is no evidence to back up the finding of no bona fide error, we must ". . . view the evidence in its most favorable light in support of the finding of the vital fact, considering only the evidence and the inferences which support the finding and rejecting the evidence and the inferences which are contrary to the finding." Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 364 (1960); *Cartwright v. Canode*, 106 Tex. 502, 171 S.W. 696 (1914); *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 613 (1950).

Mecey testified that Truman Olsen, Vice-President of Elgin Bank, was asked to make out a note for $7,500 "interest included." Olsen testified that Mecey gave him the figures to be inserted in the note. Mecey admitted reading the document after he picked it up at the bank. There was evidence to support the finding of no bona fide error.

In the alternative, appellant asserts that there is not sufficient evidence in the record that the insertion of the 10% figure was not bona fide error.

To determine whether the evidence was sufficient, this Court must ". . . consider and weigh all of the evidence in the case and . . . set aside the verdict and remand the cause for a new trial, if it . . . concludes that the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust . . . The evidence supporting the verdict is to be weighed along with the other evidence in the case, including that which is contrary to the verdict." *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951); Calvert, *supra*.

Mecey testified that insertion of the 10% figure was error. Banker Olsen testified that he couldn't remember whether Mecey told him to insert the 10% figure but then admitted on cross-examination that ". . . here all I did was fill in the figures he gave me." Mecey admitted he read the note after picking it up at the bank, but he did not remember the 10% provision. Mecey claimed 10% interest was due on the note when he filed a claim with the bankruptcy court. There was sufficient evidence on this question to present a jury question, and their determination that the insertion of the 10% provision was not bona fide error is not so against the great weight and preponderance of the evidence as to be manifestly unjust.

## II.

Appellant asserts that the ". . . trial court erred in granting any sums for attorney fees to plaintiff, because his attorneys testified that they had a 'contingent fee' contract with plaintiff, and a contingent fee is one paid out of the sums granted plaintiff, and is not an additional award to plaintiff to be paid by defendant."

Although the Seggerns and their attorneys had a contingent fee contract, the trial court properly set attorney's fees. A contingent fee agreement is merely one of the factors that the trial court may take into account when determining what is a reasonable fee. *Braswell v. Braswell*, 476 S.W.2d 444, 446 (Tex.Civ.App.—Waco 1972, writ dism'd).

"It is the responsibility of the trier of the facts to determine what is the reasonable value of an attorney's services . . . the court tried the case, heard evidence relating to the time and value of the services rendered Appellant and had knowledge of all other attending circumstances." *Harlow v. Southern Farm Bureau Casualty Insurance Company*, 439 S.W.2d 365, 368–69 (Tex.Civ.App.—Austin 1969, writ ref'd n. r. e.); *Gulf Paving Co. v. Lofstedt*, 144 Tex. 17, 188 S.W.2d 155, 160–61 (1945). The question of excessiveness was presented to the court by the parties, and the court apparently found it to be without merit. The amount found by the court was within

the limits of the evidence presented. "A court of civil appeals has authority, in looking at the entire record to determine whether an award of attorney's fees is excessive, to draw on the common knowledge of the justices of the court and their experience as lawyers and judges, and to view the matter in the light of the testimony, the record, and the amount in controversy." *McFadden v. Bresler Malls, Inc.*, 548 S.W.2d 789, 790 (Tex.Civ.App.—Austin 1977, no writ). We have reviewed the record and do not find that the sum awarded is excessive under the record as presented.

Appellant also argues that granting $6,500 in attorney's fees for appeal to the Court of Civil Appeals and $4,000 for appeal to the Supreme Court was error because ". . . there is no provision in the usury statutes for attorney fees for appeal."

In *International Security Life Insurance Company v. Spray*, 468 S.W.2d 347 (Tex. 1971), the Court held:

"The purpose of the statute [Tex.Ins.Code Ann. art. 3.62] would be defeated if only the fees incurred in the trial court were recoverable . . . *When it imposes liability on the company for 'reasonable attorney fees for the prosecution and collection of such loss,' it includes all fees incurred for that purpose.*" 468 S.W.2d 347, at 349. (Emphasis added).

Under the authority of *Spray* and the wording of Article 5069–1.06, we hold that there is provision in the usury statutes for appellate attorney's fees.

Appellant further alleges that "The trial court erred in granting any attorney fees to plaintiff because the trial court did not hear evidence on attorney fees until after the verdict was received and filed, and such testimony came too late to be considered by the court, in violation of Rule 270, Tex.R.Civ.Proc."

The trial court proposed that the hearing of evidence as to attorney's fees be postponed until a verdict was returned by the jury. The record does not reflect that either party objected to this procedure.

"In order to raise a question in an appellate court the general rule is that the record must show a proper objection, motion or request was timely made in the trial court and overruled, and that such action of the court was excepted to by the complaining party . . . *George v. Senter*, 194 S.W.2d 290 (Tex.Civ.App., 1946, error ref. n. r. e.); *Preston State Bank v. National Union Fire Insurance Co.*, 320 S.W.2d 184 (Tex. Civ.App.1958, no writ history); *McKnight v. Renfro*, 371 S.W.2d 740 (Tex.Civ.App., 1963, error ref. n. r. e.); *Baker v. Marable*, 373 S.W.2d 377 (Tex.Civ.App., 1963, no writ history)." *Marek v. Baylor County*, 430 S.W.2d 220, 222 (Tex.Civ.App.—Eastland 1968, writ ref'd n. r. e.). Having failed to object in the trial court and preserve the point for appeal, appellant has waived his right to complain.

### III.

Appellant claims that the overruling of a motion *in limine* to keep out two checks from third parties, which were allegedly payments to Mecey for the Seggerns' benefit, was reversible error. He further claims that the checks constituted hearsay evidence and that their admission caused rendition of an improper judgment.

The overruling of the motion, itself, is not reversible error. The Supreme Court in *Hartford Accident & Indemnity Co. v. McCardell*, 369 S.W.2d 331, 335 (Tex.1963), has held that, ". . . *although the overruling of a motion in limine may be error, it is never reversible error.*" (Emphasis added).

Appellant contends that certain checks, from Ray Randolph and Victor Stern, were offered to prove ". . . that payments for the benefit of Seggern had been made by a third party . . ." and that, as such, they constituted hearsay evidence.

"Evidence of a statement made out of court when such evidence is offered for the purpose of proving the truth of such previ-

ous statement, is inadmissible as hearsay." 1 C. McCormick & R. Ray, *Texas Law of Evidence*, § 781 (2d ed. 1956). However, ". . . it is only where proof of some one's [*sic*] out-of-court assertion is used as proof of the fact asserted, that evidence is hearsay. Many utterances and writings out of court may obviously be proved without coming within this class. Most obviously is this true where the words proven constitute a necessary part of the cause of action or defense, or as is sometimes said, are 'operative' facts, or part of the 'ultimate issue.' . . . The utterance or writing of the words is itself the fact to be proved, and if evidence of such utterance or writing be given by one who testifies to it as a matter of personal knowledge, it is obviously not hearsay." McCormick and Ray, *supra*, § 795.

The Randolph transaction was part of a 1975 loan involving a $2,000 annual lease on Mecey's land. "Plaintiff plead [*sic*] that $1,000 of the lease payment for the year 1975 was a part of a 1975 loan which all agree was repaid in the amount of $10,000. Gus Mecey contended that the entire $2,000 was a part of the loan." In regard to this question of what amount was actually loaned, Seggern testified that Randolph used part of the pasture and that Mecey accepted Randolph's check in payment of half of the lease money. The check was admittedly endorsed by Mecey and was introduced into evidence.

The same error is alleged in regard to a $3,400 check from Stern. Mecey loaned the Seggerns $8,000 by check. "As a defensive matter, Mecey contended that a $2,000 check dated in December of the preceding year and payable to . . . Seggern was a part of this loan. Seggern denied this and stated the $2,000 represented part of a separate loan which was repaid in December of 1974 by directing . . . Stern to make out his check in payment for a truck purchased from . . . Seggern to . . Mecey instead."

In both transactions, the checks were probative evidence as to the issue of how much

money was loaned by Mecey. As such, they were a necessary part of the Seggerns' cause of action. The writing of the words (amount, payor, payee and endorsee) on the check was the fact to be proved. The check was properly authenticated and was not hearsay.

## IV.

Appellant also asserts error in the trial court's refusal to permit evidence as to his reputation for truth and veracity.

The rule as to the admissibility of character reputation was set out in *Grant v. Pendley*, 39 S.W.2d 596, 599 (Tex.Com.App.1931, holding approved):

". . . supporting evidence of good character, either for truth and veracity or honesty and fair dealing, should only be admitted in those cases where the nature of the action directly involves the character of a party, where a witness has been impeached, or where a party by his pleadings or evidence charges his adversary with the commission of a crime involving moral turpitude."

See: *Waggoman v. Fort Worth Well Machinery and Supply Co.*, 124 Tex. 325, 76 S.W.2d 1005, 1006 (1934); *Twin City Fire Insurance Co. v. Gibson*, 488 S.W.2d 565, 575 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.).

The record in this case reflects impeachment testimony used by appellees' attorney that reflected on Mecey's character. The impeachment was by way of prior inconsistent statements in Mecey's deposition as to the exact amount due July 15, 1975, and certain inconsistent statements as to Randolph's check. The trial court's failure to allow Mecey to rehabilitate himself as a truthful witness was error.

Although the refusal to allow evidence as to Mecey's character was error, it was harmless error. Rule 434, Texas Rules of Civil Procedure.

"Whether admission of this evidence is harmless or reversible error may be de-

termined in some measure . . . by the test applied in *Grant v. Pendley* . ·. as to whether the contradictory testimony by virtue of which it was admitted *related to a 'material issue' presented to the jury.* The contradictory testimony . . was evidentiary only on an issue not submitted to the jury in the present case, and was not material to any ultimate issue of recovery or defense. The evidence as to his reputation related to . . credibility, but under the jury findings and the entire record we think it did not probably cause rendition of an improper judgment. See *State v. O'Dowd,* 158 Tex. 348, 312 S.W.2d 217, 220." *Livestock Feeder Company v. Few,* 397 S.W.2d 297, 299 (Tex.Civ.App.—Waco 1965, writ ref'd n. r. e.); *Twin City Fire Insurance Co. v. Gibson, supra.* (Emphasis added).

The character evidence here related to the topic of Mecey's reputation for truth and fair dealing. This issue referred to Mecey's credibility and was collateral to the ultimate issues of the case. Failure to allow the evidence did not cause rendition of an improper judgment.

### V.

█ Finally, appellant claims that the trial court erred in severing Mecey's cross-action for slander.

The trial court has broad discretion in determining the propriety of severance and such discretion will be overturned only on a clear showing of abuse. *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677, 682 (1956); *Sheppard v. Citizens National Bank of Austin,* 567 S.W.2d 613, 615 (Tex.Civ.App.—Austin 1978, writ ref'd n. r. e.).

From the issues, the trial court could have determined that severance was proper to prevent confusion of the issues and committed no abuse of discretion in so ordering.

The judgment of the trial court is in all things affirmed.

SMITH, J., not sitting.