Augustine LUCIO, Jr., et al., Appellants,

v.

James H. McCROCKLIN et al., Appellees.

No. 8470.

Court of Civil Appeals of Texas, Beaumont.

Aug. 21, 1980.

Rehearing Denied Sept. 25, 1980.

R. James George, Stephen Jody Helman, Austin, for appellants.

Adrian M. Overstreet, Mark T. Mitchell, Austin, for appellees.

DIES, Chief Justice:

James H. McCrocklin and twenty–six other residents of the San Marcos Independent School District, as plaintiffs below, brought suit against Augustine Lucio, Jr., President of the District, and the other members of the School Board, defendants below, alleg-

ing that the tax assessor–collector of the district "totally failed in the preparation of a roll for submission to the Board of Equalization to list all property within the school district as required by law. Specifically, many classes of personalty have been left off the roll, including but not limited to money, stocks, and bonds, automobiles of certain classes and household goods."

The parties will be referred to herein as they were below.

Plaintiffs prayed for an injunction prohibiting defendants from certifying the tax rolls of the San Marcos Independent School District and for a mandatory injunction "compelling the above referenced officials to do their official duties as prescribed by the statutes of this state."

The case was tried to a jury which found (Special Issue No. 1) that the omission of some taxable personal property from the 1978 rolls "was the result of a deliberate plan or scheme on the part of the District or its officials to permit the omitted property to escape taxation." Then in answer to nine other issues that the use of the plan caused the school taxes of the nine plaintiffs named in each issue "to be substantially larger in amount than such tax would have been in the absence of such plan or scheme."

The trial judge in his judgment finding "that it is and will continue to be impossible for the Defendants to place all taxable personal property on the 1978 tax rolls ..." and no doubt realizing that to grant plaintiff's other request would close all the schools in the district, provided:

"... that the tax assessments for the 1978 tax year ... upon the properties of ... [plaintiffs named in the special issues] be and are hereby vacated and set aside, subject to the terms and conditions hereinafter set forth, and without prejudice to the District's immediate right to collect taxes for the 1978 tax years from all taxpayers in the District other than those Plaintiffs named above."

The trial judge then ordered the district to employ "one or more persons" designated deputy tax assessors. They were to call upon each residence and business that had not responded to the district's request for rendition and "request entry into each such residence or place of business for the purpose of appraising and listing all property that was subject to taxation...."

After the deputy personally called upon each residence or place of business, the court ordered the district to review its records and determine the total cost incurred by the district in making such calls. If the amount of taxes to be levied as a result of the first visit was twenty–five percent or greater than the cost of the first visit, the deputy was to make a second visit; otherwise, the visits were to be discontinued.

It is from this judgment the defendants perfect their appeal.*

Plaintiffs of course are asking for an equitable remedy. See 31 Tex.Jur.2d *Injunctions* §§ 1, 2, p. 36 (1962).

Defendants have a point as follows:

"The trial court erred in overruling appellants' motion for instructed verdict, motion for judgment notwithstanding the verdict and motion to withdraw the case from the jury and render judgment because appellees, having failed to render their intangible personal property, household furnishings and personal effects for taxation, did not come into court with clean hands and were not entitled to equitable or injunctive relief as a matter of law."

The record in this case shows that none of the plaintiffs rendered their personal property to the tax assessor–collector. And, there is testimony they would be unwilling for a person to come into their homes to appraise the personalty.

Plaintiffs do not in any manner question the assertions of the defendants nor do they set out any evidence, in sub-

---

* It should be noted the Court's judgment was not prayed for by the plaintiffs. Both sides have complained of this in their briefs.

stance or otherwise, which would tend to dispute or refute the assertion that they each refused to render their personal property for taxation. Under the record, we invoke the sanctions of *Tex.R.Civ.P. 419* and accept defendants' statements as correct. *Rayburn v. Giles*, 182 S.W.2d 9, 13 (Tex.Civ.App.–San Antonio 1944, writ ref'd). Having a tremendous record, we accept the defendants' statements as true. *Winslow v. Duval County Ranch Company*, 519 S.W.2d 217, 225 (Tex.Civ.App.–Beaumont 1975, writ ref'd n. r. e.). See also, *Fillion v. Osborne*, 585 S.W.2d 842, 845 (Tex. Civ.App.–Houston [1st Dist.] 1979, no writ).

The defendants had sought information from banks and savings and loan associations as to their depositors and the amounts in the accounts of its taxpayers, but the efforts were unsuccessful. For a discussion of a bank's duty to a customer or depositor not to disclose information as to his account or his financial condition, see 92 A.L.R.2d 900 (1976). See also *Tex.Rev.Civ.Stat.Ann. art. 342–705* (1973); *Wilson v. City of Port Lavaca*, 407 S.W.2d 325, 331 (Tex.Civ.App.–Corpus Christi 1966, writ ref'd n. r. e.); *Jacobsen v. Citizens State Bank*, 587 S.W.2d 480, 482 (Tex.Civ.App.–Dallas 1979, writ ref'd n. r. e.).

The record here shows not only as the trial judge wrote in his judgment the impossibility of placing all taxable personal property on the 1978 tax rolls but also the impossibility of achieving this for any year.

The Legislature has recognized the difficulties encountered by the taxing agencies of the State in attempting to subject intangible personal property to ad valorem taxation under the present statutory scheme. It has made sweeping changes in the statutory law on the subject, effective January 1, 1982. See *V.T.C.A.*, Property Tax Code, §§ 11.02, 11.14 (1979).

In 1855 Judge Wheeler, speaking for the Texas Supreme Court in *Howard v. Richeson*, 13 Tex. 553, 567 (1855), wrote (quoting from Francis Maxims II), "He that hath committed inequity shall not have equity."

Professor Pomeroy in his work *Equity Jurisprudence*, Sec. 297 at 91–92 (5th ed. 1941) expresses it thusly:

"It says that whenever a party, who, as actor seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, as to award him any remedy."

6 L. Lowe, Remedies § 117, p. 164 (*Texas Practice* 2d ed.1973) puts it this way:

"The complaining party seeking injunctive relief must come into a court of equity with 'clean hands'–that is, be free from fault with respect to the particular matter of which he complains. In other words, the complainant must be free from wrong in connection with the subject matter of the controversy...."

In *City of Wink v. Griffith Amusement Company*, 129 Tex. 40, 100 S.W.2d 695 (1936), the city by ordinance outlawed "Bank Night" operated by a local theater. The movie sought to enjoin enforcement of the ordinance. Our Supreme Court agreed the ordinance was void but refused the injunction because the theater was without "clean hands."

In *Vaughan v. Kizer*, 400 S.W.2d 586 (Tex.Civ.App.–Waco 1966, writ ref'd n. r. e.), two claim adjustors sued their former employer for a declaratory judgment that an agreement not to compete after termination of employment was a void agreement. The court refused to enforce the agreement because the employer was without clean hands (reducing the adjustors' expense accounts) saying (400 S.W.2d 590):

"He who comes into equity must come with clean hands, and a complainant's wrongful conduct in a matter or transaction with respect to which he seeks injunctive relief, precludes him from obtaining such relief." (citing authorities).

See also *Local Union No. 324 v. Upshur–Rural Electric Cooperative Corp.*, 261 S.W.2d 484, 487 (Tex.Civ.App.–Texarkana 1953, no writ); *Riley v. Davidson*, 196

S.W.2d 557, 559 (Tex.Civ.App.–Galveston 1946, writ dism'd).

And see also *Gastineau v. Bradley*, 249 S.W.2d 529, 530 (Ky.Ct.App.1952):

> "It is a fundamental principle of equity that parties seeking its aid must come with clean hands. The law will not permit its process to be made the instrument of its own subversion and, if a party would pursue his remedy in equity, his demand must not rest upon a violation of the law for its foundation, or arise from his own illegal acts, or be based on conduct contra bonos mores."

By failing to render their personal property for taxation, plaintiffs violated *Tex.Rev.Civ.Stat.Ann. art. 1043* (1963). The basis of the court's decision in *Riley v. Davidson*, supra, was Davidson's violation of a statute governing his operations. In this suit, the plaintiffs sought to require defendants to enforce against others the provisions of a statute which they refused to obey. They may not obtain equitable relief while they flaunt the very law they seek to enforce against others. By this suit they not only are probably asking the court to produce the impossible but for equitable relief for conduct of which they themselves are guilty. We sustain defendants' above point of error and reverse the judgment of the trial court and render judgment that plaintiffs take nothing by reason of their suit.

REVERSED and RENDERED.

CLAYTON, J., not participating.