**JIM WALTER HOMES, INC., and Mid-State Homes, Inc., Appellants,**

v.

**Curtis L. SCHUENEMANN and wife, Phyllis Schuenemann, Appellees.**

**No. 2551CV.**

Court of Appeals of Texas, Corpus Christi.

May 12, 1983.

Rehearing Denied May 26, 1983.

Charles C. Murray, Atlas & Hall, McAllen, for appellants.

Bruce D. Viles, Wood & Burney, Corpus Christi, for appellees.

Before BISSETT, YOUNG and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

This is an action instituted by appellees alleging violations by appellants of the Deceptive Trade Practices Act, Tex.Bus. & Comm.Code Ann., § 17.41 et seq. (the "D.T.P.A."), and Chapter 6 of the Consumer Credit Code, Tex.Rev.Civ.Stat.Ann. Art. 5069 (the "Credit Code"). The D.T.P.A. claim was settled. The trial court granted appellees' motion for partial summary judgment on the Credit Code claim, and awarded them attorney's fees. In two points of error, appellants challenge each of these actions by the lower court. We affirm.

The transaction made the basis of this suit is a contract entered into by the appellees and appellant Jim Walter Homes, Inc., whereby the latter was to construct a home for appellees.[1] The contract provided for a cash price of $17,735.00 and a finance charge of $19,273.00, for a "Total of Payments" of $37,008.00. Said Total of Payments were to be made in 180 monthly installments of $205.60 each. The portions of "the contract" which gave rise to this suit are the clauses allowing acceleration by appellants in the event of appellees' default. Three instruments were introduced into evidence in this regard. The first is the Build-

---

1. The contract here in issue was later assigned to appellant Mid-State Homes, Inc.

ing Contract of February 9, 1976, wherein it provides:

> "The total of payments of $37,008.00 shall be evidenced by a promissory note payable in the time and manner aforesaid, which promissory note shall be secured by a first (MORTGAGE), (DEED TO SECURE DEBT), (DEED OF TRUST), encumbering the above described property. The promissory note and (MORTGAGE), (DEED TO SECURE DEBT), (DEED OF TRUST), shall have customary covenants and conditions included therein and shall bear interest from maturity at the rate of 6% per annum until paid and *shall provide that in event of default in payment of any installment provided for hereunder for a period of thirty (30) days, the holder thereof may at its option declare all of the remainder of said debt immediately due and collectible* and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time." [2]

The second and third instruments are, respectively, the Installment Mechanic's Lien note of February 9, 1976, and Mechanic's Lien Contract with Power of Sale of even date. The Mechanic's Lien Note states:

> "It is understood and agreed that in the event of default in payment of any installment for a period of thirty days, *the holder of this note may, at its option, declare all of the remainder of said installments due and said note will mature and it shall at once become due and payable* and the Mechanic's Lien or Deed of Trust Lien herein mentioned, either or both, shall become subject to foreclosure proceedings, as the holder may elect."

The Mechanic's Lien Contract contains the following:

> "Should owners make default in the punctual payment of said note, or any part thereof, as the same becomes due and payable ... *the holder of said note may, at his option, declare the entire remaining unpaid balance of said note immediately due,* and, if not immediately paid then in that event the Trustee or his successor is hereby authorized and empowered to sell said property at the courthouse door of said county ...."

The trial court held that appellants had contracted to charge time-price differential in excess of that allowed by law, and penalized them accordingly. Art. 5069–8.01(a). Additionally, the final judgment recites that appellants contracted to charge time-price differential in excess of double the permissible amount, and penalized them further. Art. 5069–8.02. The total penalty assessed was $64,385.29. The manner in which this figure was computed is not questioned. Rather, appellants allege error in the trial court's finding that they contracted to charge excessive time-price differential.

■ The question in summary judgment proceedings is whether the summary judgment evidence establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiffs' cause of action. *Farley v. Prudential Insurance Co.,* 480 S.W.2d 176, 178 (Tex.1972). We agree with the trial court that no such issues exist, and are of the opinion that the court acted correctly.

■ Contracts such as the one before us to provide goods and services in the construction of a new home fall squarely within the ambit of Chapter 6 of the Credit Code. *Anguiano v. Jim Walter Homes, Inc.,* 561 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1978, writ ref'd n.r.e.). Moreover, the simple act of contracting for usurious time-price differential is in violation of the Credit Code and sufficient to trigger the penalties therein. *Tanner Development v. Ferguson,* 561 S.W.2d 777, 788 (Tex.1977) (on motion for rehearing); *Ashley v. Edwards,* 626 S.W.2d 107, 111 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ). There need not be intent to actually charge the usurious rate, but merely the intent to make the bargain made. *Cochran v. American Savings & Loan Ass'n of Houston,* 586 S.W.2d 849, 850 (Tex.1979); *Ashley v. Edwards,* supra.

**2.** Emphasis throughout this opinion is ours except where otherwise indicated.

The decisions reviewed, of which there are many, reveal that the terminology found in the instruments sued upon is of the utmost importance. For instance, reservation of the right, upon default, "to declare all amounts due or to become due hereunder" does not provide for the collection of unearned interest. *Ford Motor Credit Co. v. McDaniel,* 613 S.W.2d 513, 518 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.); *Tradewinds Ford Sales, Inc. v. Caskey,* 600 S.W.2d 865, 869 (Tex.Civ.App.—Eastland 1980), aff'd in part and rev'd in part on other grounds, 616 S.W.2d 935 (Tex. 1981). Similarly, acceleration clauses referring to "the whole of the indebtedness" and "the whole of the debt herein secured" have been declared to be non-usurious, evidencing an intent to collect only principal and earned interest. *Southland Life Insurance Co. v. Egan,* 126 Tex. 160, 86 S.W.2d 722, 724 (Tex.Comm'n App.1935, opinion adopted); *Marble Savings Bank v. Davis,* 124 Tex. 560, 80 S.W.2d 298, 299 (Tex.Comm'n App.1935, opinion adopted).

In *Clements v. Williams,* 136 Tex. 97, 147 S.W.2d 769 (1941), the Supreme Court drew a distinction between the use of the terms "note" and "debt" in an acceleration clause.

"It will be noted that the opinion [of the Court of Civil Appeals] says 'and the note and contract provided that the holder could mature the entire *debt* upon failure to pay any monthly installment when due.'

We have examined the note, and we find that the Court of Civil Appeals in its opinion inadvertently used the word *debt* when it intended to use the word *note.* The default maturity clause in the note provides that the holder at his election may 'mature said note, and it shall at once become due and payable . . . .' Such default maturity clause permitted the holder of this note to mature all installments as written in it, including unearned interest . . . . Such an instrument is usurious in its inception. [Citation omitted.] If the default maturity clause had merely provided for the maturity of the debt, the note would not be usurious because unearned interest could

not be collected. [Citation omitted.]" Id. (emphasis that of the Court).

■ As previously quoted, supra, the Mechanic's Lien Contract in the instant case enables appellants to "declare the entire unpaid balance of said *note* immediately due . . . ." Likewise, the Installment Mechanic's Note here provides that appellants may "declare *all of the remainder of said installments due and said note* will mature and it shall at once become due and payable . . . ." Said installments included finance charges.

Similar language as that contained in the Installment Mechanic's Note has been found to allow for the collection of unearned interest. In *Roark v. Dickinson Trust Co.,* 89 S.W.2d 278 (Tex.Civ.App.—Eastland 1936, no writ), the second lien installment note contained the following acceleration proviso:

"If default be made . . . then all of the payments or installments of this note remaining unpaid at the time of such default shall, at the option of the holder hereof immediately become due and collectible."

And in *Commercial Credit Corp. v. Chasteen,* 565 S.W.2d 342, 344–345 (Tex.Civ.App.—Fort Worth 1978, writ ref'd n.r.e.), the Court had before it a retail installment contract with the following clause:

"If Purchaser defaults . . . the unpaid portion of the Total of Payments, shall, without notice, at the option of Seller, become due forthwith."

It was held that this gave the seller the right to accelerate and demand payment of all the unpaid principal and finance charge contracted for, both earned and unearned, and, as such, constituted the charging of usurious interest in an amount in excess of twice the amount allowed by law.

Appellants contend that we should review all three instruments before us in determining whether usurious charges were contracted for, and that the damaging clauses in the Installment Mechanic's Note and the Mechanic's Lien Contract are vitiated by the earlier Building Contract, which states

that the subsequent promissory note and instrument securing it *"shall* provide that ... the holder thereof may at its option declare all of the remainder of said *debt* immediately due and collectible ...." We hasten to point out to appellants that no acceleration could be accomplished via the terms of this instrument, but only by virtue of the subsequent instruments. While the Building Contract may be *evidence* of the terms that the parties *were to* contract for, the Installment Mechanic's Note and the Mechanic's Lien Contract are *conclusive* regarding the terms for which they *did in fact* contract. Applying the well settled rules of *Clement, Roark,* and *Chasteen,* all supra, the language of these latter two documents is open to no other reasonable interpretation than that given by the trial court. Appellant's first point of error is overruled.

The trial court awarded appellees attorney's fees in the amount of $25,754.11 through trial, and $32,192.64 in the event of appeal. These figures represent, respectively, 40% and 50% of the amount recovered. It is appellant's position in point of error number two that such was error.

A hearing was held in the trial court concerning attorney's fees at which appellees' attorney, Mr. Bruce Viles, testified. He stated that his agreement with his clients was that payment would be determined on a contingency fee basis, said fee to be 40% of the amount recovered, including any forfeiture, in the event that the suit went no further than trial, and 50% of the amount recovered, including any forfeiture, if an appeal were perfected. In the event that there was no recovery, no fee would be charged. Mrs. Schuenemann, appellee, testified that this was in fact their arrangement.

Mr. Viles stated that he has been engaged in the practice of law in Nueces County, Texas, since 1972, during which time he has been actively involved in commercial litigation, much of it pertaining to Credit Code cases. He stated that such a fee arrangement is both standard and reasonable in that locale.

Mr. Richard Stone, another attorney, also testified. Mr. Stone has been in practice in Nueces County since 1958, involved in much the same type of practice as described above. He, too, stated that this particular contingency fee arrangement is standard and reasonable for this case.

Mr. Viles reviewed the time sheets he had kept for the preparation of appellees' case. He stated that he had devoted 152.6 hours to the Credit Code portion of the case, and that a reasonable fee for such services, were his time to be billed out on an hourly basis, would be $11,603.50. Both he and Mr. Stone agreed that in the event of an appeal to this Court, $3,600.00 would be a reasonable fee, and that $2,400.00 and $2,000.00 would be a reasonable fee on an hourly basis, if, respectively, application for writ of error was filed in the Supreme Court, and such was granted. In the final judgment, the trial court found that each such amounts would be reasonable under those circumstances.

Appellants contend that the trial court erred in awarding attorney's fees based upon the contingency fee agreement rather than on a reasonable hourly fee basis. In so doing, they do not question the sufficiency of the evidence to support the finding that the contingency fee agreement is standard and reasonable for a case of this sort.

We have found no cases directly on point. In *King v. Ladd,* 624 S.W.2d 195 (Tex.Civ. App.—El Paso 1981, no writ), the Court found error in the trial court's award of one-third of the judgment as attorney's fees based upon the testimony that such was the fee arrangement between the plaintiffs and their attorney. Id. at 198. In that case, however, the attorney's fees were awarded pursuant to § 17.50 of the Business & Commerce Code, which allowed for "attorney's fees reasonable in relation to the amount of work expended."[3] The Court held that that provision requires evidence concerning

---

**3.** This language was amended in 1979 to "reasonable and necessary attorney's fees." (Vernon's Supp.1982).

a reasonable fee based on an hourly billing basis. 624 S.W.2d at 198. In *Mecey v. Seggern,* 596 S.W.2d 924 (Tex.Civ.App.—Austin 1980, no writ), the Court affirmed the trial court's setting of attorney's fees on other than a contingency basis even though the plaintiffs had agreed to such a fee with their attorneys. Id. at 929. In so holding, the Court noted that a "contingent fee agreement is merely one of the factors that the trial court may take into account when determining what is a reasonable fee." Id. In that case, however, fees were awarded under the provisions of Art. 5069–1.06, which refers to "reasonable attorney's fees fixed by the court . . . ." (Vernon's Supp. 1982).

Neither holding can be accurately analogized to the case at bar. The award of attorney's fees herein is predicated upon the penalty provisions found in Art. 8.02 of the Credit Code, which mandates that the offending creditor "*shall* pay reasonable attorney's fees *actually incurred* by the obligor in enforcing the provisions of this Article . . . ." (Vernon's Supp.1982). The difference between this statute and those under scrutiny in *Ladd v. King,* supra, and *Mecey v. Seggern,* supra, is readily apparent.

█ It is generally presumed that every word in a statute has been used intentionally, with a meaning and purpose. *Bomar v. Trinity National Life and Accident Insurance Co.,* 579 S.W.2d 464, 465 (Tex.1979); *Valley International Properties, Inc. v. Los Campeones, Inc.,* 568 S.W.2d 680, 687 (Tex. Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.), appeal dismissed 440 U.S. 902, 99 S.Ct. 1205, 59 L.Ed.2d 450 (1979).

> "The word 'incur' is a word of common usage and meaning . . . . The word means to become liable to or subject to, 'to bring on,' 'occasion,' 'cause,' or 'become liable or subject to through one's own action; bring upon oneself; *as to incur liabilities* or penalties.'" *American Indemnity Co. v. Olesijuk,* 353 S.W.2d 71, 71 (Tex.Civ.App.—San Antonio 1962, writ dism'd).

█ The question, then, is: What attorney fees did appellees actually incur? The evidence leaves absolutely no doubt that, pursuant to their fee arrangement with their attorney, the answer is: 40% of the amount recovered, including any forfeiture, through trial, 50% in event of appeal. They have incurred liabilities in that amount.

█ When recoverable, the determining of reasonable attorney's fees is a matter lying within the sound discretion of the fact finder. *Underhill v. Underhill,* 614 S.W.2d 178, 182 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *Law Offices of James R. Bass, Inc. v. Bryan,* 609 S.W.2d 652, 654 (Tex.Civ.App.—San Antonio 1980, no writ). Following the mandate of the statute, as done by the trial court here, certainly does not constitute an abuse of that discretion. Appellant's second point of error is overruled.

The judgment of the trial court is AFFIRMED.